[No. 2664. Decided December 17, 1897.]

Harris Elster, *Respondent*, v. The City of Seattle, *Appellant*.

DEFECTIVE SIDEWALK — EVIDENCE — LIABILITY OF CITY — CONSTRUCTIVE NOTICE OF DEFECT.

The admission of evidence as to the condition of a sidewalk a week or more after an accident thereon is not prejudicial error, when the evidence is merely cumulative of testimony describing the walk at the time of the accident.

In an action against a city for injuries received by reason of a fall resulting from the defective condition of a sidewalk, evidence of injuries received by others at the same place prior to the accident is admissable on the ground of being descriptive of the condition of the walk, and also as tending to show constructive notice to the city of its dangerous character.

Where a defect in a sidewalk was a matter of public notoriety in the neighborhood and well known by almost every one traveling the walk, the city must be held to have had constructive notice of the defect.

Appeal from Superior Court, King County.—Hon. Thomas J. Humes, Judge. Affirmed.

*John K. Brown,* and *F. B. Tipton,* for appellant.

*Will H. Thompson, John E. Humphries,* and *E. P. Edsen,* for respondent.

The opinion of the court was delivered by

Dunbar, J.—This is an appeal from the judgment of the superior court of King county allowing damages to respondent for an injury sustained by falling on a sidewalk in the city of Seattle and breaking his leg by said fall. It appears from the testimony in this case that at the place where the respondent fell one plank was slightly raised above the other, and when the respondent stepped on the lower plank it sank some three or four inches lower, his

foot was caught under the upper plank, and he was thrown to the sidewalk, by which accident the injury was sustained. A judgment was rendered against the city for $1,200.

There are several assignments of error set forth by the appellant, but we think they are all without substantial merit. The first objection is as to the admission of the testimony of witness Hines, who testified to the condition of the walk a week or ten days after the accident occurred. This, in any event, was only cumulative evidence, and could not have been prejudicial from the fact that he described the condition of the sidewalk the same as it was described by the other witnesses who saw the walk at or about the time of the accident. And there seems to be no substantial dispute as to the condition of the sidewalk at that place. The respondent himself testified as to exactly how the accident occurred and that his leg went so far in under the upper board that he had to take both of his hands to pull it out after he was hurt. Some objection is also made to the testimony of John Wiley, who testified to having been hurt at identically the same place and in the same way some week or ten days prior to the time when the accident happened to the respondent, excepting that his heel had been wedged in between the boards instead of his toes, and the only result was the wrenching of his leg. He however testified before he got through that he noticed the walk some week or ten days afterwards, when some little girls were playing upon it—which was about the time the accident happened to the respondent—and that it was then in the same condition. Objection is made to the testimony of Wiley and Gottstein in relation to their being hurt at this place prior to this time, but we think that this testimony was simply descriptive of the condition of the walk and nothing more; at all events, so far as the character of testimony which is objected to on the ground

20—18 WASH.

of time is concerned, it was at least material as tending to prove notice to the city of the condition of the sidewalk. The testimony throughout shows that the stringers under this walk were rotten, and that in any event the walk was in such a condition that the expiration of a week or two weeks could not possibly make any material difference.   Rosenthal testified that he examined the walk in the afternoon of the day on which the accident occurred, and described it substantially as it was described by the other witness, stating that he stepped on the plank and that it went down in the manner alleged by the respondent, that the boards were not nailed, that the stringers were decayed, and that there was nothing to prevent an accident occurring in the manner in which this is alleged to have occurred.   Gottstein, who had also fallen in this particular place and had been slightly injured, testified to the description of these boards, and a part of his description was as follows:

" At night time going down there you could not very well see it;   your foot would run against it and catch and go under that board and over you would go."

And in answer to some interrogatories as to the condition of the upper board, after stating that he did not believe the upper board was ever fitted in there at all, the question was asked:

" Was it in such a condition that it could have been pressed right down by the other board?

A.—No, sir, it could not have been pressed in there.

Q.—Why could it not?

A.—Because it was too large.   There was   not   space enough for that board to go in there.

Q.—What was the condition of the board on the upper side?

A.—That was in very bad condition.

Q.—Tell the jury what was the matter with that board?

A.—Well, I say the board was rotten;   it was all

smoothed down on one end where it seemed that people had worn it so much stepping on it.

Q.—What effect would it have when you stepped on it?

A.—It would sink under. It seemed as if there was nothing under it to hold it up."

And on the question of notice the witness Gottstein testified that " a man with a good eyesight could see it from the hill, about a block and a half away," and that " A long legged man could take a long step and get over it."

It is conceded by the counsel for the appellant that it is the duty of municipalities to make a reasonable investigation of their walks in order to examine all defects therein, latent as well as patent. He says, however, that no such evidence was introduced by respondent tending to show that such investigation was not made. This is the very kind of evidence that the appellant is objecting to, viz., the evidence of different witnesses who testified over the objections of the appellant that if they had gone there for the purpose of inspecting the sidewalk they would have noticed this defect. In addition to this, the witness Davis testified that he had traveled this street for a year and a half immediately prior to the time that the accident occurred, that the street had been in a bad condition in that place all the time, and that the stringers underneath were rotten; and when asked how he knew they were rotten, his reply was:

" You could see it plainly with the eye that the stringers were all rotten out, but this one in the center was settled altogether."

He also stated that it was his custom to take care that he did not step on this particular board—that he always walked around it towards the other edge.

There are only two questions in this case on the merits, viz.: (1) Was this an unavoidable accident, and (2) was the defect so hidden that actual notice must have been

given to the city? On the first proposition, we think that it was plainly a dangerous trap. On the second, outside of the testimony of Gottstein, which was hearsay testimony but which was introduced without objections and without any motion to strike, that the city had had actual notice, the testimony convinces us that the defect was of such a character that the city must have had constructive notice of it. It seems that it was a matter of public notoriety in the neighborhood and was well known by almost every one who had traveled that street excepting the officers of the city whose business it was to make an inspection of the walks and to discover such defects.

We believe the instructions of the court to be right, that the case was legally tried upon its merits and that no prejudicial error was committed by the court, and the judgment will therefore be affirmed.

SCOTT, C. J., and ANDERS, GORDON and REAVIS, JJ., concur.