# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LARRY ALMO, ILYSE ALMO, and ESTHER ALMO, | ) ) ) | No. 67723-3-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) | |
| CITY OF SEATTLE, | ) | UNPUBLISHED |
| Respondent. | ) ) ) | FILED: March 18, 2013 |

Cox, J. — Municipalities have a duty to exercise reasonable care to keep their sidewalks in a condition that is reasonably safe for ordinary travel.[1] But before a municipality may be liable for an unsafe condition it did not create, it must have either actual or constructive notice of the condition and a reasonable opportunity to correct it.[2] Here, there is a genuine issue of material fact whether the City of Seattle should be charged with constructive notice of an offset in a sidewalk where Larry Almo was injured. Accordingly, we reverse the summary judgment in favor of the City.

In 2008, Larry Almo tripped and fell on an offset in a Seattle public sidewalk. Part of the sidewalk was lifted up almost an inch from the surrounding

---

[1] Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002); 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 140.01 (6th ed 2012) (WPI).

[2] Wright v. City of Kennewick, 62 Wn.2d 163, 167, 381 P.2d 620 (1963); WPI 140.02.

area. It appears from the evidence that the roots from one or two nearby trees likely caused this sidewalk offset.

The record shows that the City does not routinely inspect sidewalks but relies on citizens, including property owners with property adjacent to public places, to report unsafe conditions. According to City policy, the Seattle Department of Transportation responds to these reports as quickly as possible given the number of complaints and the City's resources.

In 2010, Larry, Ilyse, and Esther Almo (collectively "Almo") sued the City, claiming that it was negligent in keeping the sidewalk reasonably safe for pedestrian use. The City moved for summary judgment. It argued that there was no evidence that it had actual or constructive notice of the sidewalk offset. The trial court agreed, granted summary judgment, and dismissed all claims.

Almo moved for reconsideration, based in part on submission of additional evidence. The court denied this motion.

Almo appeals.

## NOTICE

Almo argues that the trial court erred in granting summary judgment, claiming there is a genuine issue of material fact whether the City had constructive notice of the sidewalk offset. We agree.

A motion for summary judgment may be granted when there is no genuine issue of any material fact, and the moving party is entitled to a judgment as a

matter of law.[3] A material fact is one on which the outcome of the litigation depends.[4]

A defendant moving for summary judgment may meet the initial burden by pointing out the absence of evidence to support the nonmoving party's case.[5] If the defendant meets this initial showing, then the inquiry shifts to the plaintiff to set forth evidence to support his case.[6] The evidence set forth must be specific and detailed, not speculative or conclusory.[7] If, at this point, the plaintiff "'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial,' then the trial court should grant the motion."[8]

This court reviews a summary judgment order de novo, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party.[9]

To prevail on a negligence claim, a plaintiff must prove duty, breach, causation, and injury.[10] Generally, negligence is a question of fact for the jury.[11]

---

[3] CR 56(c).

[4] Greater Harbor 2000 v. City of Seattle, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997).

[5] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989).

[6] Id.

[7] Sanders v. Woods, 121 Wn. App. 593, 600, 89 P.3d 312 (2004).

[8] Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

[9] Lam v. Global Med. Sys., Inc., 127 Wn. App. 657, 661 n.4, 111 P.3d 1258 (2005).

[10] Keller, 146 Wn.2d at 242.

[11] Bodin v. City of Stanwood, 130 Wn.2d 726, 741, 927 P.2d 240 (1996).

Negligence may be decided as a matter of law "only 'in the clearest of cases and when reasonable minds could not have differed in their interpretation' of the facts."[12]

Municipalities have a duty to exercise reasonable care to keep their public roadways and sidewalks in a condition that is reasonably safe for ordinary travel.[13] But before a municipality may be liable for an unsafe condition it did not create, it must have notice of the condition and a reasonable opportunity to correct it.[14] Notice may be actual or constructive.[15]

Here, the parties agree that the City did not have actual notice of the sidewalk offset.[16] The issue is whether there is a genuine issue of material fact as to the City's constructive notice.

Constructive notice of an unsafe condition may be imputed to a municipality:

> "[I]f the defective condition or danger which caused the injury has existed for such a period of time that the municipal authorities, by the exercise of ordinary care and diligence, must have known of its

---

[12] Id. (quoting Young v. Caravan Corp., 99 Wn.2d 655, 661, 663 P.2d 834, 672 P.2d 1267 (1983)).

[13] Keller, 146 Wn.2d at 249; WPI 140.01.

[14] Wright, 62 Wn.2d at 167; WPI 140.02.

[15] Nibarger v. City of Seattle, 53 Wn.2d 228, 230, 332 P.2d 463 (1958).

[16] Brief of Appellants at 10-11 ("Although the City of Seattle states it had no actual notice of the hazardous condition of the involved sidewalk, fact issues remain with respect to whether it had constructive notice."); Brief of Respondent City of Seattle at 9 ("In this case, it is undisputed that Seattle neither created the sidewalk uplift, nor had actual notice of it prior to Mr. Almo's accident.").

existence, and could have guarded the public against it and failed to do so, notice will be imputed to the municipality."[17]

Whether a defendant had constructive notice of a condition is generally a question of fact for the jury.[18]

The period of time that is sufficient to impute constructive notice "is determinable largely from the circumstances of each particular case."[19] The supreme court has noted that the location of the condition and the nature of the condition may affect this period of time.[20]

In Skaggs v. General Electric Company, the jury considered whether General Electric had constructive notice of a stop sign that was bent over a sidewalk.[21] General Electric had "the control, operation, and management of Richland," and there was no argument that its "liability differ[ed] from that of a municipal corporation."[22]

---

[17] Skaggs v. Gen. Elec. Co., 52 Wn.2d 787, 790, 328 P.2d 871 (1958) (quoting 19 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 54.110 (3d ed.)).

[18] Morton v. Lee, 75 Wn.2d 393, 397, 450 P.2d 957 (1969).

[19] Skaggs, 52 Wn.2d at 789; see also Hartley v. Tacoma Sch. Dist. No. 10, 56 Wn.2d 600, 602-03, 354 P.2d 897 (1960) (concluding that the jury was justified in finding that almost one week was sufficient time for the city to have constructive notice of an icy and snowy sidewalk).

[20] See, e.g., Elster v. City of Seattle, 18 Wash. 304, 308, 51 P. 394 (1897) (concluding that the city had constructive notice of an uneven sidewalk because the testimony showed that the condition "was a matter of public notoriety in the neighborhood, and was well known by almost every one [sic] who had traveled that street").

[21] 52 Wn.2d 787, 788, 790, 328 P.2d 871 (1958).

[22] Id. at 788.

In determining whether the trial court properly submitted the notice issue to the jury, the supreme court looked at the specific circumstances in that case.[23] It considered the fact that the stop sign was on "one of the busiest streets in Richland, which has approximately twenty-seven thousand inhabitants, and that the obstruction existed from nine o'clock a.m. until four o'clock p.m."[24] Given these circumstances, the supreme court concluded that this question of fact was properly submitted to the jury.[25]

Here, the location of the offset is not in dispute, which was in the 6500 block of 52nd Avenue South in Seattle near a synagogue and mailbox. The record also shows that the offset that Almo tripped on was almost an inch high. A City employee testified that a "rule of thumb" is that an offset of half an inch or higher may create a "trip risk" for pedestrians.

There was also evidence that the roots from one or two nearby trees most likely caused the offset. But there is a genuine issue of material fact regarding how long the offset existed.

In support of his memorandum opposing the City's motion for summary judgment, Almo submitted a declaration to prove that the sidewalk was offset for a number of years. Favero Greenforest, an arborist, testified that the trees that likely caused the sidewalk offset were 90 to 110 years old and that the process of

---

[23] Id. at 790.

[24] Id.

[25] Id.

roots causing a sidewalk offset is "a slow process." He concluded that "it is probable this process of uplift was completed years before Larry Almo fell."

While the City challenged this declaration below, the court properly rejected that challenge. The City argues now, as it did below, that the Greenforest declaration did not comply with CR 56(e). It contends that the declaration contains a speculative expert opinion that lacks factual support. This argument is not persuasive.

CR 56(e) is explicit in its requirements, which serve the purpose of a summary judgment motion. Affidavits and declaration must be (1) "made on personal knowledge"; (2) "set forth such facts as would be admissible in evidence"; and (3) "show affirmatively that the affiant [or declarant] is competent to testify to the matters" asserted.[26] An expert opinion is not admissible if it is a "'conclusory or speculative'" opinion "'lacking an adequate foundation.'"[27]

Here, Greenforest gave his opinion regarding the trees' ages and the general length of time it would take for tree roots to cause a sidewalk offset. His opinion is not mere speculation; it is an expert opinion based on his knowledge as a certified arborist.[28] Thus, Greenforest's declaration complies with CR 56(e)'s evidentiary requirements.

Given the evidence presented in Greenforest's declaration, Almo presented sufficient evidence to show that there is a genuine issue of material

---

[26] CR 56(e).

[27] Miller v. Likins, 109 Wn. App. 140, 148, 34 P.3d 835 (2001) (quoting Safeco Ins. Co. v. McGrath, 63 Wn. App. 170, 177, 817 P.2d 861 (1991)).

[28] See CR 56(e).

fact whether the City should be charged with constructive notice of the offset. Whether the amount of time the offset existed is sufficient to impute constructive notice to the City given the other circumstances in this case is a question of fact for the jury.[29] Reasonable minds could differ whether the City had constructive notice.[30] Thus, the trial court's order granting the City's motion for summary judgment was error.

The City argues that Almo "needed to show that . . . the City didn't discover the uplift **because** it was negligent" before constructive notice can be imputed. But this argument fails to recognize a distinction between the issues of constructive notice and breach of duty.

As discussed above, constructive notice is imputed "'if the defective condition or danger which caused the injury has existed for such a period of time that the municipal authorities, **by the exercise of ordinary care and diligence, must have known of its existence**, and could have guarded the public against it and failed to do so.'"[31] Thus, Almo does not have to prove that the City was negligent in failing to discover the offset. Almo must prove that the offset existed for a sufficient period of time that the City should have known of its existence if it

---

[29] See Morton, 75 Wn.2d at 397.

[30] See, e.g., Nibarger, 53 Wn.2d at 230 (explaining that reasonable minds could not differ in finding that the City of Seattle did not have constructive notice of an icy and snowy sidewalk 15 hours after a snowfall).

[31] Skaggs, 52 Wn.2d at 790 (emphasis added) (quoting 19 McQUILLIN, supra, § 54.110).

was exercising ordinary care and diligence.[32] Whether the City had notice of the offset is a threshold issue that must be analyzed before turning to breach of duty. The City's argument is not persuasive because it bypasses this threshold issue.

The City also contends that "the only way the City could have discovered the uplift in this case would have been by continuous inspection of its sidewalks."[33] And the City contends that "there is no common law, statutory, or regulatory requirement that municipalities inspect their sidewalk infrastructure on an ongoing basis."[34]

We need not decide whether there is a duty to inspect sidewalks in a reasonably careful and frequent manner in order for the City to fulfill its duty. In our view, how the City goes about fulfilling its duty is more a question of whether there is a breach of duty. In any event, we have already decided there is a genuine issue of material fact whether the City was on constructive notice of the offset. Nothing else is before us.

The City also argues that Almo failed to present any evidence that its "sidewalk maintenance regime" is unreasonable or that any other regime would "better effectuate repairs of sidewalk uplifts of less than one inch."[35] But Almo

---

[32] See id.; see also Hartley, 56 Wn.2d at 602-03 ("Here, we think the jury was likewise justified in finding that sufficient time had elapsed for the [city] to discover the abutting owner's failure to abide by the ordinance, which requires such owners to remove snow and ice within twenty-four hours after it has accumulated, and that it had failed to remedy the situation within a reasonable time thereafter.").

[33] Brief of Respondent City of Seattle at 12.

[34] Id.

[35] Brief of Respondent City of Seattle at 14-15.

has presented evidence of notice, duty, breach, causation, and damages. Whether this evidence proves that the City was negligent or its sidewalk maintenance regime is unreasonable is a question a fact for the jury.[36] Negligence "should be decided as a matter of law only 'in the clearest of cases and when reasonable minds *could not* have differed in their interpretation' of the facts."[37] This is not a case where the negligence issue should be taken from the jury because reasonable minds *could* differ in determining whether the City's maintenance regime is reasonable given the circumstances in this case.

Finally, the City contends that the trial court did not abuse its discretion in denying Almo's motion for reconsideration. Because we reverse the grant of summary judgment, we need not address this argument.

We reverse the order for summary judgment and remand for further proceedings.

Cox, J.

WE CONCUR:

Appelwick, J.

Becker, J.

---

[36] See Bodin, 130 Wn.2d at 741.

[37] Id. (emphasis added) (quoting Caravan Corp., 99 Wn.2d at 661).