**FILED**
**JANUARY 14, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39449-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| URIEL VASQUEZ-MALDONADO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — This appeal follows Uriel Vasquez-Maldonado's convictions for vehicular homicide and reckless driving. On appeal, Mr. Vasquez-Maldonado argues: (1) the trial court abused its discretion when it excluded testimony from two witnesses and admitted two irrelevant exhibits; (2) he was denied the right to present a defense; (3) he was afforded ineffective assistance from his trial counsel; and (4) certain legal financial obligations were improperly ordered against him.

We affirm Mr. Vasquez-Maldonado's convictions but remand for the limited purpose of striking the community custody supervision fees from his judgment and sentence.

BACKGROUND

In April 2019, Tanyea Vasquez rented a Nissan Altima and drove to Vancouver, Washington, to spend the weekend with her boyfriend, Mr. Vasquez-Maldonado. On the evening of April 21, 2019, Tanyea[1] and Mr. Vasquez-Maldonado visited Mr. Vasquez-Maldonado's sister, Huguett Maldonado, and her partner, Erick Sandoval. All but Huguett consumed alcohol throughout the evening. At approximately 11:00 p.m., Tanyea stated she and Mr. Vasquez-Maldonado were going to drive to Othello, Washington. Both Huguett and Mr. Sandoval were unsuccessful in encouraging the couple to stay. Although Huguett did not see who drove the Nissan away, she noticed Tanyea remove keys to the Nissan from her pocket before they left. Mr. Sandoval witnessed Tanyea drive the vehicle away with Mr. Vasquez-Maldonado in the passenger seat.

A few hours later, at approximately 1:30 a.m., Alexander Zavala was driving on Highway 97 near Goldendale, Washington, when he noticed a vehicle rapidly approach from behind. He estimated the vehicle was traveling between 80 to 100 miles per hour.

---

[1] For clarity, we refer to Tanyea Vasquez, and others, by their first names. No disrespect is intended.

The approaching vehicle nearly struck the rear bumper of his vehicle, drove into the ditch, appeared to go "airborne," and then hit something. Rep. of Proc. (RP)[2] at 303. Mr. Zavala stopped to render assistance and encountered Mr. Vasquez-Maldonado outside of the vehicle with "blood all over his face." RP at 303. Mr. Zavala observed the Nissan lying on its passenger side, with Tanyea also on the passenger side.

Tanyea was pronounced dead at the scene. Mr. Vasquez-Maldonado was transported to the hospital where he was treated for his injuries. Law enforcement secured a warrant to seize a sample of Mr. Vasquez-Maldonado's blood. A subsequent toxicology report revealed Mr. Vasquez-Maldonado's blood ethanol content was "anywhere from 0.089 to 0.105" grams per 100 milliliters. RP at 677; Ex. 80. His blood also tested positive for Carboxy-THC[3] and THC.[4]

Through an additional search warrant, law enforcement searched for, and seized, evidence from the Nissan. Several opened and closed alcoholic containers were found inside the vehicle. Law enforcement noted smeared blood and blood pooling near Tanyea's head. They also noted that neither the steering wheel nor dashboard airbags had deployed, however, "the airbags that drop down from the top of the roof along the front

---

[2] Unless otherwise referenced, "RP" refers to the report of proceedings prepared by court reporter Jodi Moore spanning pretrial, voir dire, and the jury trial.

[3] Carboxy Tetrahydrocannabinol.

[4] Tetrahydrocannabinol.

and back windows" did deploy.  RP at 341.  Law enforcement seized samples from within the Nissan for forensic testing.

Mr. Vasquez-Maldonado was later charged with vehicular homicide and reckless driving.  The case proceeded to a jury trial.  Among other witnesses, the State presented the testimony of Tanyea's brother, Gabriel Vasquez.  Gabriel testified that he spoke with Mr. Vasquez-Maldonado a few days after Tanyea's death.  The conversation occurred in the driveway of the home of his father, Frank Vasquez.  Also present was Gabriel's step-mother, Patricia Vasquez, and his sister.  There, Gabriel asked Mr. Vasquez-Maldonado what happened.  Gabriel testified that Mr. Vasquez-Maldonado responded that Tanyea "was asleep and that he was driving and then the accident happened."  RP at 732.

After the State rested its case in chief, Mr. Vasquez-Maldonado called Patricia as a witness.  Patricia testified that she and Frank were present when Gabriel spoke with Mr. Vasquez-Maldonado in the driveway.  Defense counsel inquired of Patricia, "Did [Mr. Vasquez-Maldonado] say that he was driving?"  RP at 786.  Patricia responded, "No."  RP at 786.  The State made a belated objection, arguing the question called for inadmissible hearsay.  The court sustained the objection, but did not strike Patricia's response.  Defense counsel then asked Patricia if she heard Gabriel ask Mr. Vasquez-Maldonado any questions.  Patricia responded, "No."  RP at 786.

During closing argument, defense counsel argued the jury should not find Gabriel's testimony credible:

4

You also heard Gabriel say that there were four other people present, including relatives of his. But you didn't hear from any of them. You only heard from Gabriel because he's angry and he's livid. And he's got an ax to grind. He's got a motive. And he's telling you something that he didn't even tell the police. He called the police four or five times, talked to them about something else, and then made this statement attributed to my client two years and two months later. How reasonable is that? How believable is that? I'm going to ask you to find that his statements are not believable and not credible.

RP at 872-73.

Defense counsel further argued:

Gabriel testified that he arrived at his dad's house . . . Gabriel identified Patty Vasquez, Tanyea's mother being there, Frank Vasquez, his father and Tanyea's father being there, I believe his aunt one other person.
. . . .
Gabriel's the only one that you heard of that made that statement about what my client allegedly said. *I asked [Patricia], did you hear Gabriel ask [Mr. Vasquez-Maldonado] a question? She said no.*

RP at 888 (emphasis added). The State objected to defense counsel arguing facts not in evidence. The court overruled the State's objection, ruling, "The jury heard what they heard." RP at 888-89.

Ultimately, the jury found Mr. Vasquez-Maldonado guilty of both counts. The court later sentenced Mr. Vasquez-Maldonado to a total of 135 months of confinement. In imposing the sentence, the court commented that it was persuaded by Tanyea's father's request for leniency. Although Mr. Vasquez-Maldonado was found to be indigent, the court ordered a $500 victim penalty assessment (VPA), $3,628.45 in

5

restitution, and community custody supervision fees. The court ordered that interest be paid on the restitution.

Mr. Vasquez-Maldonado timely appeals.

ANALYSIS

EXCLUSION OF PATRICIA'S AND FRANK'S TESTIMONY

Mr. Vasquez-Maldonado claims the trial court abused its discretion in prohibiting Frank from testifying and when it sustained the State's tardy objection to defense counsel's question of Patricia: "Did [Mr. Vasquez-Maldonado] say that he was driving?" RP at 786. We agree the trial court abused its discretion when it sustained the State's objection to the question, "Did [Mr. Vasquez-Maldonado] say that he was driving?" *Id*. We disagree the trial court precluded Frank from testifying.

"We review the admission of evidence under an abuse of discretion standard." *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995). Discretion is abused if a decision is "manifestly unreasonable, exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The trial court is usually in the best position to decide the admissibility of evidence. *State v. Dye*, 178 Wn.2d 541, 547-48, 309 P.3d 1192 (2013). Therefore, "we give great deference to the trial court's determination: even if we disagree with the trial court's ultimate decision, we do not reverse that decision unless it falls outside the range of acceptable choices because it is manifestly unreasonable, rests on facts unsupported by

6

the record, or was reached by applying the wrong legal standard." *State v. Curry*, 191

Wn.2d 475, 484, 423 P.3d 179 (2018).

"'Hearsay' is a statement, other than one made by the declarant while testifying at

the trial . . . offered in evidence to prove the truth of the matter asserted." ER 801(c). A

"statement" is an "oral or written assertion" or the "nonverbal conduct of a person, if it is

intended by the person as an assertion." ER 801(a)(2). However, "[i]f a witness testifies

on the basis of her . . . own observation, that statement is not hearsay." *State v. Powell*,

126 Wn.2d 244, 265, 893 P.2d 615 (1995).

Patricia was asked, "Did [Mr. Vasquez-Maldonado] say that he was driving?"

RP at 786. Because Patricia answered in the negative, defense counsel's question called

for her observation, not for a "statement." *Id*. Thus, Patricia's response of "No" was not

hearsay. *Id*. The trial court abused its discretion when it sustained the State's objection.

Albeit the trial court improperly sustained the objection, the error is harmless. A

timely objection serves a dual purpose. First, it provides the trial judge an opportunity to

address an issue before the issue becomes an error. Secondly, a timely objection

preserves the alleged error for appeal. *See Wilcox v. Basehore*, 187 Wn.2d 772, 788, 389

P.3d 531 (2017). Here, we address the first purpose.

Juries are often presented with inadmissible evidence before an objection can be

lodged. In such an event, the purpose of objecting is utterly defeated as the trial judge is

deprived of the opportunity to shield the jury from the questionable evidence. A motion

to strike following a successful objection, but after the jury has heard the improper

evidence, restores the purpose of a timely objection.

Moreover, we have long held a motion to strike is the appropriate remedy to cure

inadmissible testimony entered into the record. *State v. Rushworth*, 12 Wn. App. 2d 466,

472, 458 P.3d 1192 (2020); *see also Elster v. City of Seattle*, 18 Wash. 304, 308, 51 P.

394 (1897) (motion to strike a cure for hearsay testimony in the record). A motion to

strike becomes necessary when a party successfully objects to an answer already

provided by a witness. *Rushworth*, 12 Wn. App. 2d at 472. In granting a motion to

strike, the court informs the jury that it cannot rely on the evidence in question, thereby

eliminating the evidence from the jury's consideration. *Id*. Stated otherwise, absent a

successful motion to strike, the objectionable evidence remains for the jury's

consideration.

Here, the defense called Patricia as a witness to rebut Gabriel's claim that Mr.

Vasquez-Maldonado admitted to being the driver. The trial court's erroneous evidentiary

ruling related to Patricia's testimony was harmless for two reasons. First, the State did

not move to strike Patricia's response, leaving her testimony for the jury's consideration.

Second, without objection from the State, Patricia testified she never heard Gabriel ask

Mr. Vasquez-Maldonado any questions. Indeed, Gabriel testified it was his question that

prompted Mr. Vasquez-Maldonado's purported admission. Because the defense

presented the evidence that Gabriel never asked the question, the jury may have doubted

whether Mr. Vasquez-Maldonado gave an incriminating answer to a nonexistent question. Consequently, the trial court's erroneous evidentiary ruling was harmless.

Mr. Vasquez-Maldonado next asserts the evidentiary error related to Patricia's testimony influenced his attorney's decision not to call Frank as a witness. Before the defense rested, Frank was offered as a witness. Similar to Patricia, defense counsel anticipated Frank's testimony would be used to impeach Gabriel's assertion that Mr. Vasquez-Maldonado admitted to driving the Nissan. Defense counsel stated, "I was under the impression that I would be able to *call* [*Frank*] *as a rebuttal witness to Gabriel Vasquez's testimony*. And so that's really what my original intent was." RP at 793-94 (emphasis added). The court responded that if Frank were to testify that Mr. Vasquez-Maldonado did not make the statement, "it still seems like hearsay to me." RP at 796. Rather than exclude Frank's testimony based on inadmissible hearsay, the court excluded Frank from testifying because he had not been properly disclosed.

The next day, the court reconsidered its decision and offered Mr. Vasquez-Maldonado the opportunity to call Frank as a witness. The court asked whether Frank was present. Defense counsel responded:

> Well, Judge, I might make this a little easier. I believe we're going to—we're going to just stand on our position of resting at this point and not call [Frank].
> There's been another development. And I believe that it's probably trial strategy not to do so.

RP at 816.

9

The trial court's erroneous evidentiary ruling related to Patricia's testimony did not induce Mr. Vasquez-Maldonado to not call Frank as a witness. Rather, defense counsel respectfully declined the court's invitation to call Frank for strategic reasons.

Although the trial court abused its discretion in ruling Patricia's testimony was hearsay, the error was harmless because Patricia's testimony remained in the record for the jury's consideration. The error is further deemed harmless based on Patricia's testimony that she did not hear Gabriel ask Mr. Vasquez-Maldonado any questions. Lastly, the court did not preclude the defense from calling Frank as a witness; defense counsel made a strategic decision to not call him.

RIGHT TO PRESENT A DEFENSE

Mr. Vasquez-Maldonado contends the trial court deprived him of the right to present a defense when it sustained the State's objection to Patricia's testimony and when it "excluded Frank's testimony based on a lack of notice (in addition to hearsay)." Br. of Appellant at 28. We disagree.

A criminal defendant's right to present a defense is guaranteed by both the federal and state constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). When determining whether an evidentiary decision violated a defendant's due process "right to present a defense," we apply a two-

step standard of review. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). First,

we determine whether the court abused its discretion in making the evidentiary

determination. *State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022). If the

evidentiary ruling constituted an abuse of discretion that resulted in prejudice, we need

not address the constitutional question. *Id.* at 59. However, if the ruling was either

within the trial court's discretion or was an abuse of discretion but harmless, we proceed

to the second step and review the constitutional claim. *Id.*

Mr. Vasquez-Maldonado has met the first step of the standard of review—the trial

court abused its discretion, but the error was harmless. As addressed above, the trial

court abused its discretion when it sustained the State's objection to Patricia's testimony.

However, because her testimony was not struck, and therefore available for the jury's

consideration, the error was harmless. Thus, we address the constitutional claim.

Under the second step, we engage in a de novo review of "whether the exclusion

of evidence violated the defendant's constitutional right to present a defense." *Id.* at 58.

This constitutional right is not absolute. *See, e.g.*, *Jones*, 168 Wn.2d at 720. Any State

interest in excluding evidence must be balanced against the defendant's need for the

information sought to be admitted. *Jennings*, 199 Wn.2d at 59. In weighing whether a

defendant's right to present a defense has been violated, we consider whether the

excluded evidence constitutes the defendant's "entire defense." *Arndt*, 194 Wn.2d at

11

812-13. Evidence of "extremely high probative value . . . cannot be barred without violating the Sixth Amendment." *Jones*, 168 Wn.2d at 724.

Neither Patricia's nor Frank's testimony constituted Mr. Vasquez-Maldonado's entire defense, nor was their testimony of a highly probative value.

### *Patricia Vasquez*

Mr. Vasquez-Maldonado's defense was that, "The state[ ] failed to meet its burden of proving that [Mr. Vasquez-Maldonado] was driving this automobile." RP at 854. Among other evidence, the State presented the testimony of Gabriel, who was admittedly distraught over Tanyea's death. Gabriel testified that Mr. Vasquez-Maldonado admitted to being the driver. However, Patricia's testimony, which was available for the jury's consideration, rebutted Gabriel's assertion. Patricia further rebutted Gabriel's statement that he had asked Mr. Vasquez-Maldonado any questions regarding that night.

Even if the jury understood the court's delayed ruling of "Sustained" to be a directive to disregard Patricia's response, Mr. Vasquez-Maldonado's entire defense was not premised on her testimony. RP at 786. Mr. Vasquez-Maldonado's stated defense was that the State was unable to prove beyond a reasonable doubt that he was the driver. In support of his defense, Mr. Vasquez-Maldonado attacked the "incomplete and selective police investigation," challenged the credibility of nearly every witness called by the State, and argued the lack of physical evidence and inconclusiveness of forensic testing. RP at 878.

12

Mr. Vasquez-Maldonado successfully attacked Gabriel's credibility:

You also heard Gabriel say that there were four other people present, including relatives of his.  But you didn't hear from any of them.  You only heard from Gabriel because he's angry and he's livid.  And he's got an ax to grind.  He's got a motive.  And he's telling you something that he didn't even tell the police.  He called the police four or five times, talked to them about something else, and then made this statement attributed to my client two years and two months later.  How reasonable is that?  How believable is that?  I'm going to ask you to find that his statements are not believable and not credible.

RP at 872-73.  The defense further argued that Patricia never heard Gabriel ask the question that led to Mr. Vasquez-Maldonado's purported admission: "I asked [Patricia], did you hear Gabriel ask [Mr. Vasquez-Maldonado] a question?  She said no."  RP at 889.  Indeed, it was this question, that Patricia said she did not hear, that elicited Mr. Vasquez-Maldonado's alleged admission.

Had the trial court correctly overruled the State's objection, Patricia's response of "No" still represented but a minor aspect of Mr. Vasquez-Maldonado's defense.  RP at 786. The portion of Patricia's testimony objected to by the State and sustained by the court was probative, but was not so highly probative that without it, Mr. Vasquez-Maldonado was unable to present a defense.

*Frank Vasquez*

Likewise, Frank's testimony did not constitute Mr. Vasquez-Maldonado's entire defense, nor was it so highly probative that without it, Mr. Vasquez-Maldonado was unable to present a defense.  Contrary to Mr. Vasquez-Maldonado's argument, the trial

13

court did not "exclude[ ] Frank's testimony based on a lack of notice (in addition to hearsay)." Br. of Appellant at 28. Rather, the court reversed its earlier ruling, allowed the defense to call Frank as a witness, only to have defense counsel make a strategic decision not to call him.

Mr. Vasquez-Maldonado was not denied the right to present a defense.

EFFECTIVENESS OF COUNSEL

Mr. Vasquez-Maldonado contends his trial counsel was ineffective "by not clarifying the basis for admission during Patricia's testimony" and "in not disclosing Frank as a potential witness." Br. of Appellant at 29. We disagree.

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995).

To succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate that trial counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and, if so, there is a reasonable probability that but for counsel's poor performance the outcome of the

proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In reviewing the record for deficiencies, there is a strong presumption that counsel's performance was reasonable. *McFarland*, 127 Wn.2d at 335. The burden is on an appellant alleging ineffective assistance of counsel to show deficient representation. *Id.* "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863.

Even if we were to find trial counsel's performance was deficient, to succeed on a claim on ineffective of counsel, the appellant must affirmatively prove prejudice, not simply show that "the errors had some conceivable effect on the outcome." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). An appellant establishes prejudice by demonstrating the proceedings would have been different but for counsel's deficient representation. *McFarland*, 127 Wn.2d at 337. If an appellant fails to satisfy either prong, a court need not inquire further. *Thomas*, 109 Wn.2d at 225-26.

*Patricia Vasquez*

Mr. Vasquez-Maldonado contends his trial counsel was ineffective "by not clarifying the basis for admission during Patricia's testimony." Br. of Appellant at 29. We disagree.

As previously discussed, the trial court improperly sustained the State's hearsay objection to defense counsel's question to Patricia, "Did [Mr. Vasquez-Maldonado] say that he was driving?" RP at 786. Even if defense counsel was deficient because "he did not clarify the basis for the court's exclusion of Patricia's testimony or make clear the basis for admission," Mr. Vasquez-Maldonado is unable to show prejudice because the State did not move to strike Patricia's testimony, and it was therefore available for the jury's consideration. Br. of Appellant at 30.

As previously addressed, when the trial court strikes evidence, it properly eliminates the evidence from the jury's consideration. *Rushworth*, 12 Wn. App. 2d at 472. Conversely, a trial court's failure to strike evidence it ruled to be inadmissible, leaves the evidence before the finder of fact.

Because Patricia's testimony was available for the jury's consideration, Mr. Vasquez-Maldonado was not prejudiced by his trial counsel's failure to clarify the basis for admitting Patricia's testimony.

*Frank Vasquez*

Mr. Vasquez-Maldonado claims his trial counsel was ineffective "in not disclosing Frank as a potential witness." Br. of Appellant at 29. We disagree.

As previously discussed, the State objected to the defense calling Frank as a witness because he was not properly disclosed. The court agreed with the State, ruling that Frank "has not been disclosed as a witness as part of the case in chief. I think he could have been disclosed. I'm just not going to allow it." RP at 797. However, the court reconsidered its decision the next day. Thereafter, the court asked defense counsel whether Frank was present. Defense counsel responded that, for strategic reasons, they would not be calling Frank as a witness.

The trial court did not preclude Frank from testifying due to trial counsel failing to disclose him as a trial witness. Rather, defense counsel made a strategic decision not to call Frank. Because the court did not prohibit Frank from testifying and defense counsel's decision can be characterized as legitimate trial strategy, his performance was not deficient.

Mr. Vasquez-Maldonado was not afforded ineffective assistance from his trial counsel.

EVIDENTIARY RULINGS

Mr. Vasquez-Maldonado contends the trial court abused its discretion when it admitted exhibits 42 and 43 into evidence. Alternatively, he asserts the exhibits should have been redacted prior to being admitted. We disagree.

As a preliminary matter, Mr. Vasquez-Maldonado advanced one argument before the trial court—the exhibits were irrelevant and therefore inadmissible. For the first time on appeal, Mr. Vasquez-Maldonado claims the exhibits were highly prejudicial. We will generally "not reverse the trial court's decision to admit evidence where the trial court rejected the specific ground upon which the defendant objected to the evidence and then, on appeal, the defendant argues for reversal based on an evidentiary rule not raised at trial." *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). Notwithstanding this general prohibition, we exercise our discretion and address both relevance and prejudice.

"We review the admission of evidence under an abuse of discretion standard." *Lane*, 125 Wn.2d at 831. Discretion is abused if a decision is "manifestly unreasonable, exercised on untenable grounds, or for untenable reasons." *Carroll*, 79 Wn.2d at 26. The trial court is usually in the best position to decide the admissibility of evidence. *Dye*, 178 Wn.2d at 547-48. Therefore, "we give great deference to the trial court's determination: even if we disagree with the trial court's ultimate decision, we do not reverse that decision unless it falls outside the range of acceptable choices because it is

18

manifestly unreasonable, rests on facts unsupported by the record, or was reached by applying the wrong legal standard." *Curry*, 191 Wn.2d at 484.

The State offered, and the court admitted into evidence, Exhibit 42 and Exhibit 43. Exhibit 42 is a return of a search warrant. Exhibit 43 is a receipt for property taken from Mr. Vasquez-Maldonado. Both exhibits include a signature line prefaced by "Acknowledged by Person from whom blood was extracted." Exs. 42, 43. In the signature line of both exhibits is a handwritten notation, "X REFUSED." *Id.* Both exhibits are signed by Marcie Allen, the phlebotomist who extracted Mr. Vasquez-Maldonado's blood. *Id*.

Mr. Vasquez-Maldonado objected to the State's motion to admit the exhibits into evidence. Defense counsel argued, "But there's additional information about Mr. Maldonado that I don't think is appropriate. I think he refused to sign or some other information on there that—I don't see any purpose, relevance to the jury for that." RP at 450. Should the court decide to admit the exhibits, defense counsel made a request: "I'd at least ask for a redaction if nothing else." RP at 451.

The State countered that the exhibits were relevant to show Ms. Allen extracted Mr. Vasquez-Maldonado's blood because Ms. Allen did not recall doing so. The State also contended it would be helpful for the jury to see Ms. Allen's signature because "we're going to spend a lot of time talking about [it.]" RP at 451. The court ruled:

19

I'm going to allow the exhibits to be admitted. I think a foundation has been set. I think the chain of custody is probative. The jury does need to be able to evaluate that.

As far as the redactions, I'm not going to redact it. I think that changes the exhibit in a significant way.

However, the basis for the refusal is certainly not relevant, so any argument or any testimony about the refusal isn't relevant, it's speculation. I won't allow you any questioning of this witness. If there's another witness who can provide more light on it who has a little more information, I'll reserve on that. But for this witness I wouldn't allow it.

RP at 453-54.

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Generally, relevant evidence is admissible. ER 402. Relevant evidence may, however, "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403.

Under ER 403, "there is a presumption favoring admissibility, and the burden is on the party seeking to exclude the evidence to show that the probative value is substantially outweighed by the undesirable characteristics." *Atkerson v. State*, 29 Wn. App. 2d 711, 729, 542 P.3d 593 (2024), *review granted sub nom. Atkerson v. Dep't of Children, Youth & Families*, 549 P.3d 113 (Wash. 2024).

Here, exhibits 42 and 43 were relevant to show that blood was taken from Mr. Vasquez-Maldonado's body, and that Ms. Allen was the phlebotomist who extracted the blood. These facts were necessary to establish a chain of custody. The exhibits were also

20

relevant in memorializing the date and time the State obtained the blood sample. The trial court did not abuse it discretion in finding the exhibits were relevant.

Next, Mr. Vasquez-Maldonado argues Exhibits 42 and 43 were highly prejudicial because they created an inference of guilt. We disagree. First, the exhibits merely show that Mr. Vasquez-Maldonado refused to sign the forms. Evidence was not presented that Mr. Vasquez-Maldonado refused to provide a sample of blood, nor that he overtly failed to acknowledge that blood had been withdraw from his body. Second, the court minimized the notation "REFUSED" by prohibiting the State from presenting any testimony or argument about the refusal. Exs. 42, 43

Although Mr. Vasquez-Maldonado did not invite the trial court to weigh the exhibits' probative value against their prejudicial effect, the court's decision was not manifestly unreasonable. Mr. Vasquez-Maldonado has failed to overcome ER 404's presumption favoring admissibility.

Lastly, Mr. Vasquez-Maldonado argues the trial court should have redacted the exhibits. We disagree. In response to Mr. Vasquez-Maldonado's request to redact the exhibits, the court found that "it would be very difficult to have a blank spot there and still have an accurate exhibit" and that redaction "changes the exhibit[s] in a significant way." RP at 452-53. In granting the trial court broad discretion to make evidentiary rulings, we decline to upset these important findings.

The trial court did not abuse its discretion in admitting Exhibits 42 and 43.

21

VPA, Interest on Restitution, and Community Custody Supervision Fees

Mr. Vasquez-Maldonado argues the VPA, interest on restitution, and community custody supervision fees should be struck from his judgment and sentence.

After sentencing, the trial court ordered the Yakima County Clerk to "write off" the VPA and any interest that had accrued on the restitution. Clerk's Papers at 104. The trial court's order renders Mr. Vasquez-Maldonado's VPA and restitution arguments moot. "As a general rule, we do not consider questions that are moot" and decline to do so here. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012).

The State concedes that the community custody supervision fees should be struck due to a recent change in the law. We accept the State's concession.

Former RCW 9.94A.703(2)(d) (2021) provided, "Unless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." However, effective July 1, 2022, the legislature amended the statute to remove the supervision fees provision. *See* Second Substitute H.B. 1818, 67th Leg., Reg. Sess. (Wash. 2022); RCW 9.94A.703. As we held in *State v. Wemhoff*, "Former RCW 9.94A.703(2)(d) involved a cost imposed by the trial court, and that cost was not finalized until the termination of all appeals." 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022). Mr. Vasquez-Maldonado is entitled to the benefit of the amended statute because his case is pending on direct review.

No. 39449-2-III
*State v. Vasquez-Maldonado*

## CONCLUSION

We affirm Mr. Vasquez-Maldonado's convictions but remand for the limited purpose of striking the community custody supervision fees from his judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.

23