[No. 40308.    Department Two.    February 20, 1969.]

CHESTER W. MORTON et al., Respondents, v. ART L. LEE et al., Appellants.*

*Merrick, Burgess & Hofstedt* and *H. J. Merrick,* for appellants.

*Cushman & Holt* and *R. M. Holt,* for respondents.

POYHONEN, J.†—Respondents, Chester W. Morton and his wife, Helen, recovered damages from appellants for injuries sustained by Mrs. Morton in a fall at the entrance to, or on the sidewalk immediately adjacent to, the appellants' store.

*Reported in 450 P.2d 957.

†Judge Poyhonen is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Appellants have for many years owned and operated a food market at North Bend, Washington. The Mortons, an elderly retired couple, residents of Arizona, were motoring from Wenatchee to the Olympic Peninsula, accompanied by their 14-year-old grandson, Mike Powell. On arriving at North Bend, the Mortons stopped at appellants' store, and Mrs. Morton and her grandson went into the store to pick up food items for lunch. After a lapse of approximately 3 to 4 minutes, Mr. Morton followed them into the market to ascertain if his help would be needed in carrying out the purchases. On being told that his assistance would not be needed, he returned to the automobile. About 5 minutes later, Mrs. Morton, exiting from the store, slipped and fell on the sidewalk.

There was evidence that Mrs. Morton stepped on an apricot on the walkway at or near the store entrance. She sustained a serious comminuted fracture of the femur of the left leg just above the knee.

Appellants made seven assignments of error. Our disposition of the case requires a discussion of three of them: (1) That the court erred in not sustaining a challenge to the sufficiency of the respondents' evidence at the close of their case; (2) That the court erred in ruling that, as a matter of law, Mr. Morton was not guilty of contributory negligence; and (3) That the court erred in failing to give appellants' proposed instruction on the duty of a storekeeper to his business invitees.

The issue of contributory negligence on the part of Mrs. Morton has not been raised on appeal.

Appellants contend that respondents failed, as a matter of law, to make out a prima facie case of negligence, based on either actual or constructive notice to appellants of the presence of an apricot on the walkway.

There is no evidence, and it is not contended, that any of the appellants or any of their agents or employees had actual notice. There was, as a matter of law, no actual notice.

Was there sufficient evidence of negligence based on the theory of constructive notice to make out a prima facie case?

The evidence before us in the trial record indicates the following facts: For about 18 years appellants had maintained a display stand in front of their market on which fruits in season, boxes of tomatoes, sacks of charcoal and potatoes, and other items were placed. Fruits, intended for sale by the box, were displayed by the box; whereas, fruits designed for sale in lesser quantities, were found in bins located inside the store. On the day in question, there was at least one full box, open-topped, of apricots on the stand in front of the store. The stand was constructed so that the top would be horizontal; however, because of a slope on the concrete on which the stand rested, the tops of the boxes slanted slightly downward toward the street. Whether the stand was entirely on appellants' property or partly on the public sidewalk was not clearly established.

Mrs. Morton testified that she did not see the apricot when she went into the market nor when she came out and stepped upon it. Mike Powell also did not notice the apricot when he went into the market. He testified that on his departure from the store, he preceded his grandmother to the door, held it open for her to pass, and followed her out of the store. He did not see the apricot until after her fall.

Mr. Morton testified that he did not see the apricot when he went into the market; but he did see a whole apricot lying on the sidewalk when he left the market building. At that time, he had thought of kicking it aside but decided not to because two people passed by him just at that moment, and he felt that he might kick it into them. His best estimate was that about 5 minutes elapsed from the time he left the market until he was informed of his wife's fall.

Mrs. Francis Glazier, wife of a clothing store owner whose store was located just east across the alley from appellants' market on the same side of the street, testified that she left the clothing store and passed the market on her way to coffee or lunch, at noon or shortly before. At that time, she saw a crushed fruit on the walk in front of the market but she was unable to identify it. She thought this was prior to the fall about which she heard afterwards.

There was testimony that Mrs. Morton stepped on a whole apricot, and while she was down on the walk some one kicked the remains back toward the front wall of the market building.

Jim Wright, produce man in the market, testified that he was in the market building; that he proceeded to the front entrance when he saw a commotion there; that he picked up an apricot pit from the pavement and threw it into the disposal. Whether this was the same pit that had been kicked previously cannot be ascertained from the record.

At the time of the fall, there were present in the market, in addition to A. L. Lee and E. H. Lee, the appellants, a produce man, at least one stock boy and box boy, possibly two, and at least one checkstand cashier, possibly two. The market had only one customer exit-entrance door. The entrance walkway and the sidewalk adjacent to it were visible from one of the three checkstands which was about 12 feet from the door. The entrance door had a wooden base panel, about 12 to 15 inches high, which impaired visibility somewhat from within the store into the walkway area immediately in front of the door when the door was closed.

As to the procedures followed to keep the outside display area and the sidewalk adjacent to it reasonably safe for customers and other invitees, the testimony discloses that the walkways were regularly swept at 9 o'clock in the morning upon opening the market for the day, and ordinarily not again that day unless a condition came to the attention of those working in the market that would require sweeping. The market was open until 9 o'clock in the evening. The walkway and entrance had been swept at 9 a.m. on the morning in question but not again prior to the fall. No one employee was charged with the specific responsibility of overseeing the housekeeping in this area. The box boys used the one customer entrance-exit to carry out the customer purchases. They, and all employees, had instructions to pick up any litter or debris whenever they saw it.

Appellants argue that the only testimony as to how long the apricot had been on the walk was that of Mr. Morton who saw it 5 minutes before the fall, and that 5 minutes, as a matter of law, is not sufficient to constitute constructive notice and that the action should have been dismissed.

■ Ordinarily, it is a question of fact for the jury, whether under all of the circumstances, a defective condition existed long enough so that it would have been discovered by an owner exercising reasonable care. *Presnell v. Safeway Stores, Inc.,* 60 Wn.2d 671, 374 P.2d 939 (1962). The permissible period of time for the discovery and removal or warning of the dangerous condition is measured by the varying circumstances of each case. To a large extent, it depends upon the opportunity for discovery open to the defendant's employees by reason of their number, their physical proximity to the hazard, and, in general, the likelihood they would become aware of the condition in the normal course of duties. The decisive issues, therefore, are the length of time the condition is present and the opportunity for discovery under the circumstances proved. *Deagle v. Great Atlantic & Pac. Tea Co.,* 343 Mass. 263, 178 N.E.2d 286 (1961). While the plaintiff must prove that the defective condition existed long enough so that by the use of reasonable care it should have been discovered and remedied, that fact, like other facts, may be proved by circumstantial as well as by direct evidence. *Presnell v. Safeway Stores, Inc., supra; Louie v. Hagstrom's Food Stores, Inc.,* 81 Cal. App. 2d 601, 184 P.2d 708 (1947).

Mr. Morton saw the apricot only about 5 minutes before the accident, but that is only one circumstance to be considered. To hold for appellants on the issue, as a matter of law, would compel us to ignore entirely the issue of whether appellants' housekeeping procedures and practices, with respect to the display stand and the surrounding area, met the standard of care that an ordinarily careful and prudent store owner would have deemed reasonably adequate under the same circumstances. The resolution of that issue was for the jury, not this court. It appears to us that rea-

sonable minds could differ. The jury could find from the evidence that there was considerable debris in the area at the time of the fall, and that the required care was not exercised. The jury could also draw an inference from the evidence that the stand, located outside the market building, received less attention than areas within the market building. Viewed in that light, the actual length of time that the particular apricot had been on the walk becomes of less importance. This was not a case of a foreign substance, but rather of an item which was displayed for sale. The appellants had put the item on display.

We hold that the rationale of the *Presnell* case, and the cases cited therein, is controlling. In *Presnell,* there was the added factor that a banana skin on the floor inside the store was dark in color, leading to the inference that it may have been there for a considerable period of time, but the housekeeping practices were remarkably similar to those in the instant case, though somewhat indicative of greater care than appears here.

In *Wollerman v. Grand Union Stores, Inc.,* 47 N.J. 426, 221 A.2d 513 (1966), the plaintiff slipped on a string bean resting on the floor in the defendant's store. The court said at 428-29:

> That someone was negligent seems clear enough. Vegetable debris carries an obvious risk of injury to a pedestrian. . . .
>
> When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor. If the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate; and this whether the risk arises from the act of his employee or of someone else he invites to the premises.

In *Strack v. Great Atlantic & Pac. Tea Co.,* 35 Wis. 2d 51, 56, 150 N.W.2d 361. (1967), the Wisconsin court said:

> [W]e think supermarkets which display their produce and fruit in such a way that they may be handled by customers and dropped or knocked to the floor unintentionally is a way of doing business which requires the

storekeeper to use reasonable measures to discover and remove such debris from the floor.

Next, appellants assign error to the ruling of the trial court that, as a matter of law, Mr. Morton was free of contributory negligence.

■ If the apricot was actually on appellants' property, then the duty of exercising ordinary care to discover and remove it was upon appellants, not upon Mr. Morton. The appellants have cited no authority in support of their position that there was a duty on the part of Mr. Morton to remove the apricot, and unless some duty devolved upon him, there could be no neglect of duty. If the apricot was on the public sidewalk, which appears more probable, there was no duty upon Mr. Morton to remove it. No duty devolves upon a pedestrian using the public sidewalks. Appellants have cited no authority to the contrary, and we have found none. Mr. Morton was not bound to anticipate that of all the customers entering and leaving the market and that of all the persons using the public sidewalks of North Bend at that time, his wife would be the one person who would be injured. Nor was he bound to anticipate that appellants would fail to remove the danger before his wife exited from the market. For Mr. Morton to have removed the apricot from the walkway might well have been an act of good citizenship, but failure to do so was not negligence. We would, perhaps, be confronted with another problem had Mr. Morton accompanied his wife out of the market, and seeing the danger, had failed to warn her.

We hold that this assignment is without merit. Consequently, we do not reach the question of whether the community property laws of this state would apply to an Arizona couple traveling through Washington, so that negligence, if any, on the part of the husband in a situation such as this would be imputed to the wife and bar recovery.

Finally, appellants contend that the trial court erred in failing to give the following requested instruction:

You are instructed that the presence of an apricot on the pavement outside of the defendants' store actually

existed, or the fact that plaintiff wife fell, or that she was seriously injured would not of themselves warrant a recovery by the plaintiffs.

A store keeper owes a duty to his business invitees to use ordinary care to make the premises of the store and entrances and exits thereto reasonably safe for their use; that is, to maintain the premises and entrances and exits in such condition as a reasonably careful and prudent store keeper would deem sufficient to protect customers from danger while exercising ordinary care for their own safety.

██ We hold that it would not have been inappropriate for the trial court to have given the instruction requested. However, it appears to us that the trial court in instruction No. 3[1] and in instruction No. 5[2] adequately presented to the jury the applicable law. The instructions given to the jury did not prevent counsel from fully arguing to the jury

[1]Instruction No. 3 reads in part: "A party is not entitled to recover solely because there has been an accident. Any party claiming negligence or contributory negligence has the burden of proving, by a fair preponderance of the evidence, that the other party was negligent in some one of the particulars claimed, and that such negligence was a proximate cause of the injury and damage claimed.

". . . .

" 'Negligence' is the failure to exercise reasonable and ordinary care, and by the term 'reasonable and ordinary care' is meant that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances or conditions. Negligence may consist in the doing of some act which a reasonably prudent person would not do under the same or similar circumstances, or in the failure to do something which a reasonably prudent person would have done under the same or similar circumstances."

[2]Instruction No. 5 reads: "The operator of a grocery store owes to a person who has an express or implied invitation to come upon the premises in connection with that business, a duty to exercise ordinary care for his safety. This includes the exercise of ordinary care to maintain in a reasonably safe condition those portions of the premises, including entrances, exits, and abutting sidewalk thereto which such person is expressly or impliedly invited to use or which he might reasonably be expected to use.

"In order to support a finding of negligence, a temporary unsafe condition of the said premises must either have been brought to the actual attention of defendant or defendants' employees or it must have existed for a sufficient length of time and under such circumstances that defendant or defendants' employees should have discovered it in the exercise of ordinary care."

appellants' theory of the case. Therefore, no error was committed.

The judgment of the trial court is affirmed.

HUNTER, C. J., HILL, FINLEY, and HAMILTON, JJ., concur.