[No. 1287-2.    Division Two.    July 2, 1975.]

HELEN B. CIMINSKI, *Appellant*, v. FINN CORPORATION, INC., *Respondent.*

*Peter Sterbick, Terry Lumsden,* and *Sterbick & Sterbick,* for appellant.

*Frederick M. Meyers* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* for respondent.

ARMSTRONG, C.J.—Helen Ciminski appeals from a summary judgment of dismissal in her action for damages resulting from injuries sustained while she was a business invitee of Finn Corporation, Inc., d/b/a Brad's Family Restaurant. She contends that Finn was not entitled to judgment as a matter of law, but rather that she had presented genuine issues of material fact as to whether Finn exercised reasonable care in keeping its premises safe for its customers. We agree and therefore reverse.

■ A summary judgment is properly granted if the pleadings, affidavits, depositions and admissions before the trial court show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. For summary judgment purposes, we are required, as was the trial court, to view the evidence and all reasonable inferences therefrom in a light most favorable to the nonmoving party and most strongly against the movant. The motion may be granted only if reasonable men could reach but one conclusion from this evidence. *Meissner v. Simpson Timber Co.,* 69 Wn.2d 949, 421 P.2d 674 (1966); *Wardhaugh v. Weisfield's, Inc.,* 43 Wn.2d 865, 264 P.2d 870 (1953).

With these principles in mind, we set forth the facts as presented upon summary judgment. The injury occurred on April 25, 1971, while Mrs. Ciminski, who was 73 years of age, and a companion, Norman Erpelding, were business invitees in Brad's Family Restaurant, a self-service cafeteria style establishment. In Brad's, the cafeteria counter started near the door and after several feet made a 90-de-

gree turn to the left, where it continued for several more feet. Each side of the counter contained a ledge on which customers pushed their trays. Available on the first leg of the counter and halfway down the second leg were trays, salads, potatoes, vegetables, bread, and butter patties. Toward the end of the cafeteria line were pieces of meat on carving tables, beyond which was the cashier. There were no employees serving food on the line, except the meat carvers who stood at the end of the counter with their backs to the cashier and sliced meat requested by the customers. Near the right side of the counter in the area of the meat was a door to the kitchen.

Mrs. Ciminski and Mr. Erpelding had attended a baseball game and decided to eat dinner at Brad's, arriving at approximately 7:15 p.m. Upon entering the restaurant, Mrs. Ciminski decided to go to the restroom. With Mr. Erpelding following a few feet behind her, Mrs. Ciminski walked along the right side of the counter toward the restrooms which were located in the back of the restaurant. A few feet before the meat carvers, and near the kitchen door, she fell. She asserted that there was a liquid-like substance on the floor which caused her to slip and fall. Mr. Erpelding stated that he saw her foot slide through a liquid of some kind and saw her fall to the floor. None of the three or four employees who were in the area at the time of the fall and for approximately ½ hour afterward saw any substance on the floor. Neither Mrs. Ciminski nor Mr. Erpelding could state how long the liquid had been on the floor. Over her protests, Mrs. Ciminski was helped up and put in a chair where she remained until an ambulance arrived approximately ½ hour later. As a result of the fall, she suffered severe injuries to her hip, requiring extensive medical care, including hospitalization, operations and other treatment. Her mobility is much more limited than before the accident.

Depositions and statements of restaurant employees presented at the time of summary judgment indicated that in

the area between the kitchen door and the cafeteria line, especially near the meat, there tended to be spills and the area was greasy at times. Pieces of lettuce and butter patties were sometimes dropped on the floor by customers. Some of the food items were placed on the counter in crushed ice. The meat pans, which were set in racks over hot water to keep them warm, were replaced several times each day, which involved removing pans which had become sloppy or unattractive, taking them to the kitchen through the door and bringing new ones out. When other foods needed replenishing they, too, were brought through this door to the counter. The restaurant had no written policies concerning maintenance of the area. A janitor cleaned the area each evening. New employees were told and old employees frequently reminded that they were to keep a lookout for matter on the floor, which when found was to be immediately cleaned up. No one employee was responsible for policing the area

■ A prerequisite to recovery from a property owner for injuries sustained on his premises is the showing that the owner had actual or constructive notice of the condition causing the injury. *See Morton v. Lee*, 75 Wn.2d 393, 450 P.2d 957 (1969). The basic touchstone is the requirement that a property owner or occupier exercise reasonable care in protecting his invitees from injury.

It is common knowledge that the modern merchandising method of self-service poses a considerably different situation than the older method of individual clerk assistance. It is much more likely that items for sale and other foreign substances will fall to the floor. Clerks replenish supplies by carrying them through the area the customer is required to traverse when selecting items. Customers are naturally not as careful in handling the merchandise as clerks would be. They may pick up and put back several items before ultimately selecting one. Not unreasonably they are concentrating on the items displayed, which are usually arranged specifically to attract their attention. *Cf. Ward-*

*haugh v. Weisfield's, Inc., supra.* Such conditions are equally typical of self-service restaurants and the most common self-service operation, the modern supermarket.

■ An owner of a self-service operation has actual notice of these problems. In choosing a self-service method of providing items, he is charged with the knowledge of the foreseeable risks inherent in such a mode of operation. The logic of this rule is obvious if it is remembered that if a clerk or other employee has been negligent, the employer is charged with the responsibility of creating a dangerous condition. *Falconer v. Safeway Stores, Inc.,* 49 Wn.2d 478, 303 P.2d 294 (1956). In a self-service operation, an owner has for his pecuniary benefit required customers to perform the tasks previously carried out by employees. Thus, the risk of items being dangerously located on the floor, which previously was created by the employees, is now created by other customers. But it is the very same risk and the risk has been created by the owner by his choice of mode of operation. He is charged with the creation of this condition just as he would be charged with the responsibility for negligent acts of his employees. A pattern of conduct, such as self-service, is as permanent and the risks from such pattern as foreseeable, as a deceptive condition. An owner is required to take reasonable precautions against such deceptive conditions on his premises to prevent injury to patrons. *See Wardhaugh v. Weisfield's, Inc., supra.*

This rule does not create a higher standard of care for self-service operations. It is axiomatic that a property owner or occupier is required to use reasonable care toward his business invitees. What is reasonable depends upon the nature and the circumstances surrounding the business conducted. *Wardhaugh v. Weisfield's, Inc., supra.* One of the circumstances to be considered is the method of operation. The realities of a self-service operation cannot be ignored, and what is reasonable for the Ma and Pa grocery store where Pa retrieves each item from behind the counter for the customer may not be reasonable where the custom-

ers have access to every item for sale and are subject to the whims of all other customers in handling that merchandise.

Another example is the cafeteria style restaurant. In a conventional service restaurant, the customers remain seated and the food is brought to them by those who serve food for a living, and who are thus more experienced and probably more adept at carrying trays and food items. On the other hand, when a diner eats at a cafeteria restaurant, he follows in the wake of other customers. These customers have the freedom to pick up several items before choosing one and they themselves must arrange the food, including liquids, on their trays and slide them down the line. In contrast to a conventional service restaurant, in some self-service eating places, the food which is made available to the diners is carried to the counters across the area the customers are required to walk.

The different circumstances presented in the self-service operation may require the owner to take different methods to protect his invitees. For example, the flooring substance should be chosen with the fact in mind that customers handling food will be passing over it. Another important element is the housekeeping procedures which the owner has instituted to discover and remove conditions which may cause injury. What is reasonably necessary in a particular situation, of course, is to be determined by the jury. In many instances, such things as a system of regular inspections of areas susceptible to the accumulation of debris, perhaps by someone specifically responsible for such a task, may be considered necessary.

■■■ As the above discussion shows, an owner of a self-service establishment has actual notice that his mode of operation creates certain risks of harm to his customers. Since a self-service operation involves the reasonable probability that these risks will occur, these risks are foreseeable. Thus, it is not necessary to show actual or constructive notice of the specific hazard causing injury, and it becomes the task of the jury to determine whether the

proprietor has taken all reasonable precautions necessary to protect his invitees from these foreseeable risks.

We recognize that the precise issue presented here has not been previously discussed by our Supreme Court. In *Morton v. Lee, supra,* the court reaffirmed the requirement that constructive notice of the specific hazard be shown, but did acknowledge that the reasonableness of an owner's housekeeping procedures is important in determining whether he is to be charged with knowledge of the condition. While the object causing injury in *Morton* probably fell from a self-service bin outside defendant's grocery store, the circumstances in *Morton* did not amount to the complete self-service operation illustrated by the cafeteria in the case at bar. Our decision here takes the next logical step from *Morton* and is in keeping with the modern trend in slip and fall cases in self-service operations.

The *Morton* court quoted language from two cases from other jurisdictions representing the modern trend in this area of law. *Wollerman v. Grand Union Stores, Inc.,* 47 N.J. 426, 221 A.2d 513 (1966) and *Strack v. Great Atl. & Pac. Tea Co.,* 35 Wis. 2d 51, 150 N.W.2d 361 (1967). In *Wollerman* the plaintiff had slipped on a string bean located on the floor of defendant's supermarket, and the court noted:

When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor. If the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate; and this whether the risk arises from the act of his employee or of someone else he invites to the premises. The operator's vigilance must be commensurate with that risk. . . .

. . . Defendant's knowledge is relevant only as to . . . [a condition caused by patron] but even there, since the patron's carelessness is to be anticipated in this self-service operation, defendant is liable, even without notice of the bean's presence on the floor, if . . . defendant failed to use reasonable measures commensurate with the risk involved to discover the debris a

customer might leave and to remove it before it injures another patron.

*Wollerman v. Grand Union Stores, Inc., supra* at 429. The *Wollerman* court cited its earlier case of *Bozza v. Vornado, Inc.*, 42 N.J. 354, 200 A.2d 777 (1964), in which the plaintiff had slipped while at defendant's cafeteria restaurant. The court in *Bozza* held:

> Thus, we believe that when plaintiff has shown that the circumstances were such as to create the reasonable probability that the dangerous condition would occur, he need not also prove actual or constructive notice of the specific condition. Factors bearing on the existence of such reasonable probability would include the nature of the business, the general condition of the premises, a pattern of conduct or recurring incidents.

*Bozza v. Vornado, Inc., supra* at 360.

The *Morton* court quoted from *Strack v. Great Atl. & Pac. Tea Co., supra*, to the effect that:

> supermarkets which display their produce and fruit in such a way that they may be handled by customers and dropped or knocked to the floor unintentionally is a way of doing business which requires the storekeeper to use reasonable measures to discover and remove such debris from the floor.

*Morton v. Lee, supra* at 398.

Decided subsequently to *Morton* was *Jasko v. F.W. Woolworth Co.*, 177 Colo. 418, 494 P.2d 839 (1972), the facts of which closely resemble those in the case at bar. In *Jasko* the plaintiff had slipped on a piece of pizza in an area where customers purchased pizza pieces and ate them while standing in the aisle of the store. The court aptly stated:

> The dangerous condition was created by the store's method of sale. The steps taken to constantly clean the floor show that the store owner recognized the danger.
> The practice of extensive selling of slices of pizza on waxed paper to customers who consume it while standing creates the reasonable probability that food will drop to the floor. Food on a terrazzo floor will create a danger-

ous condition. In such a situation, notice to the proprietor of the specific item on the floor need not be shown.

The basic notice requirement springs from the thought that a dangerous condition, when it occurs, is somewhat out of the ordinary. . . . In such a situation the storekeeper is allowed a reasonable time, under the circumstances, to discover and correct the condition, unless it is the direct result of his (or his employees') acts. However, when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves.

*Jasko v. F.W. Woolworth Co.*, *supra* at 420-21. *See also Rhodes v. El Rancho Mkts.*, 4 Ariz. App. 183, 418 P.2d 613 (1966); *Lang v. Winn-Dixie La., Inc.*, 230 So. 2d 383 (La. App. 1969), *writ refused*, 255 La. 815, 233 So. 2d 252 (1970); *Garcia v. Barber's Super Mkts., Inc.*, 81 N.M. 92, 463 P.2d 516 (1969).

■■ Requiring the owner of a self-service operation to exercise reasonable care in protecting his business invitees from the foreseeable risks of his method of doing business does not make such owner an insurer of those on his premises. If he has taken all precautions reasonably necessary to protect his invitees from injury, he is not liable merely because someone is injured on his property. Additionally, of course, it must be shown that the dangerous condition on his premises was connected to the injury by the requisite causation.

In the case at bar, Mrs. Ciminski presented sufficient evidence upon summary judgment to entitle her to take her case to the jury. Viewing the evidence most favorably to her and drawing all reasonable inferences from it, she created a genuine issue as to whether Finn had taken reasonable precautions for her safety. As recited above, there was evidence that there tended to be spills in the area where she fell, and that the floor in this area was sometimes greasy. As the operation was set up, the meat pans were carried from the kitchen to the counter over this area, one reasonable inference being that grease or dripping water could fall to the floor. Many of the food items offered to the

customers were of the type which could, and which in fact sometimes did, fall to the floor. Another important factor is that the restaurant made available to customers a route to the restrooms along the counter and across this area.

The judgment is reversed and the case remanded for trial.

PEARSON and PETRIE, JJ., concur.

Petition for rehearing denied August 13, 1975.

Review denied by Supreme Court October 21, 1975.