FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 13, 2025

*Stone, C.J. [signature]*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 13, 2025

*Sarah Pendleton [signature]*
SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| HWAYO JENNY GALASSI and MICHAEL GALASSI, wife and husband, | ) ) ) | No. 102410-0 |
| Respondents, | ) ) | |
| v. | ) ) | En Banc |
| LOWE'S HOME CENTERS, LLC, a Foreign Limited Liability Company, | ) ) ) | Filed: <u>March 13, 2025</u> |
| Petitioner. | ) ) ) | |

YU, J. — This case presents a fact-specific application of the "reasonable foreseeability exception" to the traditional notice rule in a premises liability action. Plaintiff Hwayo J. Galassi alleges she was injured by falling merchandise in the self-service area of a retail hardware store, when an improperly shelved roll of wire garden fencing fell on her. She filed this negligence action against the store's proprietor, defendant Lowe's Home Centers LLC.

As the plaintiff, Galassi has the burden of proving all the elements of her negligence action, including that Lowe's alleged negligence was a "'cause in fact'"

of her injuries. *Johnson v. Wash. State Liquor & Cannabis Bd.*, 197 Wn.2d 605, 612, 486 P.3d 125 (2021) (quoting *Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 458, 805 P.2d 793 (1991)). In a premises liability case, the cause-in-fact element traditionally requires proof that the defendant had actual or constructive notice of the alleged unsafe condition. *Id.* However, we have recognized an exception to this "traditional notice requirement" where "'the nature of the proprietor's business and [its] methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.'" *Id.* at 613 (quoting *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 49, 666 P.2d 888 (1983)).

This case is before us on Lowe's motion for summary judgment. It is undisputed that Galassi cannot prove cause in fact pursuant to the traditional notice rule because Lowe's did not have notice of the improperly shelved roll of wire fencing before she was injured. Therefore, Lowe's is entitled to summary judgment unless the evidence in the record creates a genuine issue of material fact as to the applicability of the reasonable foreseeability exception. The trial court granted summary judgment to Lowe's, but the Court of Appeals reversed and remanded for further proceedings. We affirm the Court of Appeals.

The record is limited because this case was resolved on summary judgment at the trial court. However, the evidence shows that the nature of Lowe's business is a large, warehouse-style hardware store serving retail customers. Its methods of

operation include (1) a practice of displaying 2x25 foot rolls of wire fencing on high shelves for customers to serve themselves and (2) policies requiring store employees to perform safety walks and immediately correct unsafe conditions, such as improperly shelved items that could fall and injure customers.

From this evidence, a trier-of-fact could find Lowe's methods of operation made it reasonably foreseeable that (1) retail customers serving themselves would take bulky rolls of wire fencing down from their high display shelves for inspection, then attempt to replace any unwanted items back on the shelves, (2) customers attempting to replace bulky, unwanted items on high shelves may do so improperly, and (3) a bulky, improperly shelved roll of wire fencing could fall from its high shelf and injure someone, creating the alleged unsafe condition that injured Galassi. Yet, there is also contrary evidence, such as a lack of prior similar incidents, which could support the opposite conclusion.

Thus, there is a genuine issue of material fact precluding summary judgment as to the applicability of the reasonable foreseeability exception. We affirm the Court of Appeals and remand to the trial court for further proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because this case is before us on Lowe's motion for summary judgment, the facts are presented in the light most favorable to Galassi. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

Galassi was shopping at Lowe's for wire fencing to protect her garden from animals. She found the fencing in an aisle toward the rear of the garden center, in an area of the store without video surveillance. Various rolls of fencing were displayed horizontally on a large shelving unit with stop bars at the front of the shelves, allowing customers to serve themselves.

There were no store employees or other customers in the aisle with Galassi at the time. She located a 2x25 foot roll of fencing she wished to purchase on the second-highest shelf, slightly above her eye level and nearly 6 feet off of the floor. The front-most roll[1] of fencing was "askew" or "[c]rooked," sitting partially on the shelf and partially slanted forward, over the stop bar. Clerk's Papers (CP) at 57, 62. Galassi tried to remove it, but the roll of fencing "pop[ped]" off the shelf as soon as she touched it, "in the blink of an eye." *Id.* at 64, 57. The roll of fencing fell down from the shelf and landed directly on Galassi's foot, breaking her toe and causing long-term physical and mental injuries.

Galassi "struggled" to replace the roll of fencing on the shelf, concerned that if she left it on the floor, someone else "might not see it and then might have an accident." *Id.* at 58. She then sought help from a Lowe's employee (Employee

---

[1] From the evidence in the record, Lowe's wire fencing display appears somewhat similar to a large vending machine. Each type of fencing occupied a single shelf in the display with the rolls of fencing stored horizontally, one behind the other. When a customer wished to purchase a particular type of fencing, they could remove the roll at the front of the shelf (the "front-most roll"), and any remaining rolls on that shelf would slide forward for the next customer.

Jenkins), who was working in another section of the garden center. A manager called 911, and Employee Jenkins took a photograph of the display shelf.

Galassi and her husband filed a complaint against Lowe's, alleging negligence and seeking damages for medical expenses, physical and mental pain, and loss of consortium.[2] After filing its answer, Lowe's moved for summary judgment, asserting that it "did not have actual or constructive notice of the allegedly unsafe condition" and that "the [reasonable foreseeability] exception to showing notice does not apply."[3] *Id.* at 9.

Lowe's conceded Galassi could "argue that the danger of falling objects is reasonably foreseeable at a large warehouse hardware store" but argued "this is not sufficient." *Id.* at 15. Instead, according to Lowe's, the only way for Galassi to avoid summary judgment would be to submit evidence satisfying the "criteria," *id.*, from *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 869 P.2d 1014 (1994).

In *Ingersoll*, the plaintiff sought damages for injuries she allegedly incurred from slipping on a "smear" of an unknown "substance" in the common area of a shopping mall. *Id.* at 651. Due to the "lack of evidence to prove actual or

---

[2] Given the narrow issue before us on review, this opinion attributes all plaintiffs' arguments to "Galassi." No disrespect is intended.

[3] We decline to consider any additional issues raised on appeal, including "the existence of an unsafe condition" or whether Lowe's breached its duty of care through "any unsafe merchandising practice." Br. of Resp't at 8 (Wash. Ct. App. No. 56715-6-II (2022)) (capitalization and boldface omitted); Resp. to Br. of Amicus Curiae Wash. State Ass'n for Just. Found. at 5.

constructive notice," the plaintiff sought to apply the reasonable foreseeability exception "based on the unsupported assumption that the substance came from a food-drink vendor." *Id.* at 654. *Ingersoll* held the exception did not apply because the "record [was] silent as to obviously relevant facts" to support the plaintiff's theory, such as information about the vendors in the mall and their methods of operation, or evidence as to the "historical experience of slip and fall incidents." *Id.* at 654-55. Drawing from *Ingersoll*, Lowe's argued that Galassi must present similar evidence to avoid summary judgment in this case.

With its summary judgment motion, Lowe's filed a declaration from Employee Jenkins, who "did not see any improperly stocked or improperly put away items on the wire fencing display shelf" prior to Galassi's injury. CP at 45. Employee Jenkins also explained Lowe's safety policies, stating that "[t]he first thing employees do in the store every day is a safety walk" to "specifically look for improperly stocked or improperly put away items that could fall or injure customers." *Id.* Employees are further "trained to immediately correct unsafe conditions such as improperly stocked or improperly put away items on display shelves as soon as such a condition is brought to our attention or if we notice it on our own." *Id.* Lowe's also filed portions of Galassi's deposition testimony

consistent with the facts set forth above, a photograph of the display shelf,[4] and an interrogatory answer stating there were "no other similar incidents at the subject store for the three-year period prior to this incident." *Id.* at 73.

In opposition to Lowe's motion for summary judgment, Galassi argued that the improperly shelved roll of fencing in this case is unlike the unknown substance the plaintiff slipped on in *Ingersoll*. Based on her own experience attempting to retrieve the roll from the display shelf, as well as the safety policies described in Employee Jenkins' declaration, Galassi argued, "It is reasonably foreseeable that another customer would take out a fencing roll and then decide to put it back but do so carelessly or incorrectly," creating the alleged unsafe condition that caused her injury. *Id.* at 21-22. Galassi did not submit additional evidence regarding the nature of Lowe's business or its methods of operation, but she filed declarations describing the extent of her injuries.

The trial court granted Lowe's motion for summary judgment, citing the "categories of evidence" from *Ingersoll* in its oral ruling. Verbatim Rep. of Proc. at 25. Its written order similarly states that Galassi "cannot establish any of the criteria necessary to apply the [reasonable foreseeability] exception." CP at 40.

---

[4] Galassi alleges for the first time in her supplemental brief that Lowe's used two different photographs in its briefing to the trial court but falsely indicated they were the same. Suppl. Br. of Resp't at 3-4; *compare* CP at 11, *with id.* at 69. Lowe's argues this allegation is irrelevant and not properly before us. Pet'r's Suppl. Reply Br. at 1. Resolution of this dispute is not necessary to our review.

The Court of Appeals reversed, citing "two key pieces of evidence—Galassi's testimony about the askew roll of wire fencing falling on her when she touched it and [Employee] Jenkins' declaration that associates are trained to immediately correct improperly stocked items on display and do a safety walk at the beginning of the day." *Galassi v. Lowe's Home Ctrs., LLC*, 27 Wn. App. 2d 593, 600, 534 P.3d 354 (2023). The court concluded that a trier-of-fact could find the nature of Lowe's business and its methods of operation made it reasonably foreseeable that a roll of fencing would be improperly shelved and "may fall from the display shelves and create unsafe situations." *Id.*

Lowe's petitioned for review, supported by amicus Washington Defense Trial Lawyers (WDTL). We granted review[5] and accepted an amicus brief supporting Galassi from the Washington State Association for Justice Foundation (WSAJF), to which both parties responded.

ISSUE

Does the evidence in the record, viewed in the light most favorable to Galassi, create a genuine issue of material fact regarding the applicability of the reasonable foreseeability exception?

---

[5] Lowe's petition for review was initially stayed pending *Moore v. Fred Meyer Stores, Inc.*, No. 102258-1, but *Moore* was later dismissed on the parties' joint motion. After the mandate issued in *Moore*, we lifted the stay in this case and granted review.

ANALYSIS

Our recent opinion in *Johnson*, 197 Wn.2d 605, provides a detailed analysis of the history and application of the reasonable foreseeability exception. However, the parties disagree as to how the legal standards set forth in *Johnson* apply to the facts presented in this case.

The facts here are somewhat unusual because Galassi was allegedly injured by falling merchandise, rather than in a slip-and-fall incident. The reasonable foreseeability exception certainly can apply in falling merchandise cases; indeed, we first adopted it in a case involving "injuries caused when a paint can fell on plaintiff's foot." *Pimentel*, 100 Wn.2d at 40. Yet, we have generally addressed the reasonable foreseeability exception in the context of alleged slip-and-fall incidents. *See Johnson*, 197 Wn.2d 605; *Mucsi v. Graoch Assocs. Ltd. P'ship No. 12*, 144 Wn.2d 847, 31 P.3d 684 (2001); *Iwai v. State*, 129 Wn.2d 84, 915 P.2d 1089 (1996) (plurality opinion); *Ingersoll*, 123 Wn.2d 649; *Wiltse*, 116 Wn.2d 452. Thus, this case presents the opportunity to clarify the application of settled law in the context of a relatively unusual fact pattern.

We reaffirm that the reasonable foreseeability exception applies equally to falling merchandise, slip-and-falls, or other incidents where business invitees are injured by alleged unsafe conditions. The exception is "'not a per se rule,'" and there is no fact pattern to which it automatically applies. *Johnson*, 197 Wn.2d at

9

614 (quoting *Wiltse*, 116 Wn.2d at 461). For the exception to apply, the plaintiff must prove they were injured by "'specific unsafe conditions that are continuous or foreseeably inherent in the nature of the business or mode of operation.'" *Id.* (quoting *Wiltse*, 116 Wn.2d at 461). Moreover, even where it does apply, the exception is merely a way for the plaintiff to prove "'cause in fact.'" *Id.* at 612 (quoting *Wiltse*, 116 Wn.2d at 458). It "does not shift the burden to the defendant to disprove negligence" or otherwise relieve the plaintiff's burden to prove every element of their claim. *Pimentel*, 100 Wn.2d at 49.

Because this case is before us on summary judgment, our review is "de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Keck*, 184 Wn.2d at 370. Therefore, we must consider the evidence "from both sides" in the light most favorable to Galassi. *Van Hook v. Anderson*, 64 Wn. App. 353, 358, 824 P.2d 509 (1992). If Lowe's meets its "initial burden of showing the absence of an issue of material fact . . . then the inquiry shifts to the party with the burden of proof at trial," Galassi, who "'must set forth specific facts showing that there is a genuine issue for trial.'" *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989) (quoting CR 56(e)).[6]

---

[6] As discussed below, Lowe's chose to submit evidence with its motion for summary judgment, such as Employee Jenkins' declaration, but it was "not required" to do so. *Young*, 112

The limited record at this stage of the proceedings is certainly not conclusive. Nevertheless, we affirm the Court of Appeals' holding that a trier-of-fact could find the reasonable foreseeability exception applies in this case.

A.    Overview of the reasonable foreseeability exception

To provide context for our analysis, it is first necessary to review the reasonable foreseeability exception to the traditional notice rule, as recently clarified and reaffirmed in *Johnson*, 197 Wn.2d 605.

The traditional notice rule arises "[i]n the premises liability context with business invitees," such as where a customer is allegedly injured by an unsafe condition in a retail store. *Id.* at 612. Business proprietors must "'exercise reasonable care to protect'" against "'physical harm caused to [their] invitees by a condition on the land.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 343 (AM. L. INST. 1965)). However, business proprietors are not strictly liable for all injuries to their customers. Instead, the injured customer must prove the elements of a negligence action: "'(1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the

---

Wn.2d at 226. *Contra* Pet'r's Suppl. Br. at 14-15. As a result, it is not "circular" or "troubling" to consider this evidence in the light most favorable to Galassi when deciding whether Lowe's met its initial burden. *See Galassi*, 27 Wn. App. 2d at 600. *Contra* Lowe's Home Ctrs., LLC's Pet. for Discr. Rev. at 13; Resp. to Br. of Amicus Curiae WSAJF at 1. To the contrary, that is the standard of review required by controlling precedent. *Keck*, 184 Wn.2d at 370.

injury.'" *Id.* at 611 (quoting *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994)).

Our traditional notice rule goes to the proximate cause element; specifically, cause in fact. The traditional rule "'springs from the thought that a dangerous condition, when it occurs, is somewhat out of the ordinary.'" *Pimentel*, 100 Wn.2d at 47 (quoting *Jasko v. F.W. Woolworth Co.*, 177 Colo. 418, 420-21, 494 P.2d 839 (1972)). Based on this view, a proprietor "'is allowed a reasonable time, under the circumstances, to discover and correct'" unsafe conditions that temporarily arise on the premises. *Id.* (quoting *Jasko*, 177 Colo. at 421). Thus, to establish "'that the proprietor's negligence was a cause in fact of [their] injury,'" the traditional notice rule requires the customer to prove that the proprietor had "actual or constructive notice of [the] unsafe condition."[7] *Johnson*, 197 Wn.2d at 612 (quoting *Wiltse*, 116 Wn.2d at 458); *Pimentel*, 100 Wn.2d at 44.

Our traditional notice rule was well established by the mid-1930s. *See Wiard v. Mkt. Operating Corp.*, 178 Wash. 265, 268, 34 P.2d 875 (1934). Fifty years later, this court followed the "predominant theme" among other jurisdictions in recognizing "that modern techniques of merchandising necessitate some

---

[7] Cause in fact may also be established if the unsafe condition "'is the direct result'" of actions attributable to the proprietor. *Pimentel*, 100 Wn.2d at 47 (quoting *Jasko*, 177 Colo. at 421). Galassi does not assert that Lowe's directly caused the alleged unsafe condition here.

modification of the traditional rules of liability," leading to our adoption of the reasonable foreseeability exception. *Pimentel*, 100 Wn.2d at 46.

The exception was adopted in the context of "the modern merchandising method of self-service." *Ciminski v. Finn Corp.*, 13 Wn. App. 815, 818, 537 P.2d 850 (1975), *abrogated in part on other grounds by Pimentel*, 100 Wn.2d 39. As compared to prior merchandising methods using "individual clerk assistance," a self-service method of operation can provide a "pecuniary benefit" to the proprietor by requiring "customers to perform the tasks previously carried out by employees." *Id.* at 818-19. Yet, self-service operations also increase the risk of injury to customers, who "may pick up and put back several items before ultimately selecting one" for purchase, and "are naturally not as careful in handling the merchandise as clerks would be." *Id.* at 818. As a result, "'where lots of goods are stocked and customers remove and replace items, hazards are apparent.'" *Ingersoll*, 123 Wn.2d at 653 (internal quotation marks omitted) (quoting *Coleman v. Ernst Home Ctr., Inc.*, 70 Wn. App. 213, 218-19, 853 P.2d 473 (1993)).

When a proprietor chooses a method of operation in which hazards are apparent, unsafe conditions are not necessarily "'out of the ordinary,'" as the traditional notice rule presumes. *Pimentel*, 100 Wn.2d at 47 (quoting *Jasko*, 177 Colo. at 421). To the contrary, sometimes "'the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable.'" *Id.* at

13

47-48 (quoting *Jasko*, 177 Colo. at 421). In those circumstances, "'the logical basis for the [traditional] notice requirement dissolves.'" *Id.* at 48 (quoting *Jasko*, 177 Colo. at 421). Thus, the reasonable foreseeability exception to the traditional notice rule provides "that an invitee may prove notice with evidence that the 'nature of the proprietor's business and [their] methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.'" *Johnson*, 197 Wn.2d at 618 (quoting *Pimentel*, 100 Wn.2d at 49).

Although the reasonable foreseeability exception arose in the self-service context, we have since clarified that "'self-service is not the key to the exception.'" *Id.* at 615 (internal quotation marks omitted) (quoting *Ingersoll*, 123 Wn.2d at 654). Instead, "the real purpose of the exception [is] to focus on aspects of the proprietor's business that make unsafe conditions reasonably foreseeable." *Id.*

In this case, Lowe's argues that because self-service is no longer *necessary* to the reasonable foreseeability inquiry, self-service should no longer be *important*. Lowe's notes that "[i]n today's world, just about all retail stores are self-service stores," suggesting that businesses should not be held responsible for "'choosing' a self-service method of operation" because there is effectively no other choice. Resp. to Br. of Amicus Curiae WSAJF at 6-7. In other words, Lowe's appears to argue that because most establishments have now adopted "modern techniques of

merchandising," we should *return* to more "traditional rules of liability." *Contra Pimentel*, 100 Wn.2d at 46. We decline to do so.

Although *Johnson* expanded the reasonable foreseeability exception beyond the self-service context, the underlying legal standard did not change. The proper inquiry is still whether "'the *nature of the proprietor's business* and . . . *methods of operation* are such that the existence of unsafe conditions on the premises is reasonably foreseeable.'" *Johnson*, 197 Wn.2d at 613 (emphasis added) (quoting *Pimentel*, 100 Wn.2d at 49). Whether the proprietor uses a self-service method of operation remains an important part of this inquiry, alongside many other types of potentially relevant evidence.

Our precedent has broadly interpreted "the nature of the business and methods of operation" to encompass any "aspects of the proprietor's business that make unsafe conditions reasonably foreseeable" in light of "the actual cause of the hazard" that allegedly injured the plaintiff. *Id.* at 615; *Wiltse*, 116 Wn.2d at 461. Thus, to use the example of a retail store, "the nature of the business and methods of operation" may include (but are not limited to) any or all of the following: the physical features and layout of the store, including the location where the injury occurred; the types of merchandise offered for sale; where and how different types of merchandise are displayed; the extent to which customers are required or encouraged to interact with the merchandise before purchase; typical customer

patterns and behaviors; where store employees are generally situated; whether there is signage providing instructions or warnings to customers; any history of prior injuries; the store's safety, inspection, or maintenance policies; and even the store's geographical location and relevant local weather patterns. *E.g.*, *Pimentel*, 100 Wn.2d at 42; *Wiltse*, 116 Wn.2d at 461-62; *Ingersoll*, 123 Wn.2d at 654-55; *Iwai*, 129 Wn.2d at 88-89, 101; *Johnson*, 197 Wn.2d at 608-09, 615.

As discussed below, the evidence that will be relevant and necessary in any particular case varies considerably, depending on the specific factual allegations at issue. However, as amicus correctly argues, "the fact that a business elects to use a self-service mode of operations" can still be important in appropriate cases. Br. of Amicus Curiae WSAJF at 8. Self-service may be more commonplace today than it was when *Pimentel* was decided, but the "'hazards'" associated with self-service operations are no less "'apparent.'" *Ingersoll*, 123 Wn.2d at 653 (internal quotation marks omitted) (quoting *Coleman*, 70 Wn. App. at 218-19).

Nevertheless, we emphasize that the reasonable foreseeability exception does not automatically apply to any particular business or in any particular case. It applies only where the plaintiff carries their burden to "prove notice with evidence that the 'nature of the proprietor's business and [its] methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.'" *Johnson*, 197 Wn.2d at 618 (quoting *Pimentel*, 100 Wn.2d at 49). The exception

"does not obviate the need to prove the existence of the unreasonably dangerous condition" or "shift the burden to the defendant to disprove negligence." *Id.* at 619; *Pimentel*, 100 Wn.2d at 49. It is simply one way in which a plaintiff might prove "'the proprietor's negligence was a cause in fact of [their] injury.'" *Johnson*, 197 Wn.2d at 612 (quoting *Wiltse*, 116 Wn.2d at 458).

B.      The reasonable foreseeability exception requires a fact-specific analysis

As discussed above, reasonable foreseeability *generally* can be shown through a broad range of evidence pertaining to the nature of a business and its methods of operation. However, the evidence needed to prove reasonable foreseeability in any *particular* case depends on the specific facts presented. We therefore reject Lowe's suggestion that the reasonable foreseeability exception must always be supported by similar evidence.

"Cause in fact refers to the '"but for" consequences of an act—the physical connection between an act and an injury.'" *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 289, 481 P.3d 1084 (2021) (quoting *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)). "Establishing cause in fact involves a determination of what actually occurred," and thus presents a factual question that "is generally left to the jury." *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 478, 951 P.2d 749 (1998); *Meyers*, 197 Wn.2d at 289. Likewise, because the reasonable foreseeability exception is used to establish cause in fact, "whether it applies is

17

fundamentally a question of fact for the jury" unless the facts are not disputed and "reasonable minds could not differ." *Moore v. Fred Meyer Stores, Inc.*, 26 Wn. App. 2d 769, 777, 532 P.3d 165 (2023);[8] *Meyers*, 197 Wn.2d at 289.

Nevertheless, Lowe's urges the court to take a checklist-style approach, arguing that in every case where the reasonable foreseeability exception is disputed, the plaintiff must produce particular types and quantities of evidence in support of "a location-and-condition specific analysis" mirroring *Ingersoll*. Pet'r's Suppl. Br. at 12. This approach is inconsistent with our precedent and the fact-intensive nature of the inquiry. As we recently reaffirmed, the reasonable foreseeability exception applies beyond the contexts "in which it arose." *Johnson*, 197 Wn.2d at 614. As a result, in each individual case, courts must conduct a fact-specific analysis "focus[ed] on aspects of the proprietor's business that make unsafe conditions reasonably foreseeable." *Id.* at 615.

---

[8] We decline Lowe's request to "reverse" the Court of Appeals' opinion in *Moore*. Pet'r's Suppl. Reply Br. at 5; *see also* Amicus Curiae Mem. of WDTL at 11-13. *Moore* held that the Washington "pattern instruction on premises liability . . . is no longer an accurate statement of the law" because "*Johnson* establishes reasonable foreseeability as equal to traditional notice requirements and whether it applies is fundamentally a question of fact for the jury." 26 Wn. App. 2d at 776-77. *Moore* is not currently before us; as noted above, we granted the parties' joint motion to dismiss review in that case.

To the extent Lowe's objects to *Moore*'s holding on jury instructions, that issue is not presented here. If Lowe's intends to argue that reasonable foreseeability is *not* a question of fact, that is incorrect. The traditional notice rule establishes "'cause in fact,'" which "is generally left for the jury" unless "reasonable minds could not differ." *Johnson*, 197 Wn.2d at 612 (quoting *Wiltse*, 116 Wn.2d at 458); *Meyers*, 197 Wn.2d at 289. Lowe's does not explain how the exception to the traditional notice rule could be relevant to some different, nonfactual issue.

The unusual facts in this case further demonstrate why Lowe's approach is inappropriate, as many types of evidence that were necessary in *Ingersoll* are simply not necessary here. *Ingersoll* involved a slip-and-fall incident, but Galassi did not slip on anything; Lowe's merchandise allegedly fell on her. This factual distinction is not determinative, but it is highly relevant. Indeed, after *Pimentel* adopted the reasonable foreseeability exception in a falling merchandise case, "*Wiltse* cautioned *against* 'applying the rule in *Pimentel* to slip and fall type cases.'" *Id.* (emphasis added) (quoting *Wiltse*, 116 Wn.2d at 459). Though we later applied the exception to slip-and-fall incidents, *Wiltse* correctly recognized the importance of such factual distinctions in assessing reasonable foreseeability.

The legal principles governing the reasonable foreseeability exception are the same in both slip-and-fall cases and falling merchandise cases. *E.g.*, *Johnson*, 197 Wn.2d 605; *Pimentel*, 100 Wn.2d 39. Nevertheless, they often raise different factual issues. For example, in a slip-and-fall incident, it may be unclear what the injury-causing substance actually was, an issue that is rarely disputed in cases of falling merchandise. *Compare Ingersoll*, 123 Wn.2d at 651 (plaintiff "could not identify" the substance she slipped on), *with Pimentel*, 100 Wn.2d at 40 ("a paint can fell on plaintiff's foot"). Here, there is no question as to what allegedly injured Galassi; it was a 2x25 foot roll of wire garden fencing.

19

Similarly, in many slip-and-fall incidents, it is not clear how the substance ended up on the floor in the location where the plaintiff slipped. *E.g.*, *Ingersoll*, 123 Wn.2d at 654 (plaintiff made an "unsupported assumption that the substance came from a food-drink vendor"); *Moore*, 26 Wn. App. 2d at 771 (plaintiff "did not know where the water came from or how it got on the floor"); *Tavai v. Walmart Stores, Inc.*, 176 Wn. App. 122, 126, 307 P.3d 811 (2013) (no evidence how water got on the floor "15 feet away from a check-out counter"); *Arment v. Kmart Corp.*, 79 Wn. App. 694, 697, 902 P.2d 1254 (1995) ("drink spill in the menswear department"); *Carlyle v. Safeway Stores, Inc.*, 78 Wn. App. 272, 276, 896 P.2d 750 (1995) ("leaking shampoo bottle in the coffee section"). In this case, by contrast, the improperly shelved roll of fencing was on its high display shelf, precisely where Lowe's had chosen to display it. As to how the improper shelving occurred, Galassi does not make "unsupported assumption[s]," as the plaintiff did in *Ingersoll*. 123 Wn.2d at 654. Instead, she attempts to support her theory with inferences drawn from the evidence presented on summary judgment, viewed in the light most favorable to her.

These distinctions do not mean the reasonable foreseeability exception is necessarily satisfied in this case. However, they are clearly relevant to determining the evidentiary showing that is relevant and necessary on summary judgment.

20

C.      Lowe's did not meet its initial burden on summary judgment

Applying the above principles to this case, we hold that Lowe's did not meet its "initial burden to show the absence of a genuine issue of material fact" on summary judgment. *Id.* Therefore, the inquiry never shifted to Galassi to produce evidence creating a factual dispute as to reasonable foreseeability; the evidence from Lowe's had already done so.

As discussed above, the evidence Lowe's presented on summary judgment includes portions of Galassi's deposition testimony, a photograph of the display shelf, and Employee Jenkins' declaration. Galassi's testimony,[9] along with the photograph of the display shelf, could allow a trier-of-fact to find Lowe's has a practice of displaying bulky rolls of wire fencing on high shelves. It is undisputed that the display shelf could be accessed by customers without employee assistance, and there is no indication in the record that Lowe's prohibited or discouraged self-service from this particular display shelf. As a result, a trier-of-fact could reasonably infer that Lowe's methods of operation include allowing customers to help themselves to bulky rolls of wire fencing from high display shelves,

---

[9] Lowe's argues that "Galassi's testimony consists of self-serving and conclusory statements" regarding "an unsupported allegation with no extrinsic evidence." Lowe's Home Ctrs., LLC's Pet. for Discr. Rev. at 11. This is inaccurate. Galassi testified to factual matters based on personal knowledge from her own experience, and her allegations are corroborated by extrinsic evidence, including Employee Jenkins' declaration and the photograph of the display shelf. Whether Galassi's testimony is credible or persuasive must be decided by the trier-of-fact. A court on summary judgment "must not weigh the veracity of a declaration simply because it is 'self-serving.'" *Jones v. State*, 170 Wn.2d 338, 355 n.7, 242 P.3d 825 (2010).

potentially "pick[ing] up and put[ting] back several items before ultimately selecting one" for purchase. *Ciminski*, 13 Wn. App. at 818.

In addition, Employee Jenkins' declaration describes store policies requiring employees to perform a daily "safety walk" and "immediately correct unsafe conditions such as . . . improperly put away items on display shelves," which "could fall and injure customers." CP at 45. From this, a trier-of-fact could infer that due to Lowe's methods of operation, it was reasonably foreseeable that customers serving themselves would sometimes "improperly put away items on display shelves." *Id.* The trier-of-fact could also infer that a bulky, improperly shelved, 2x25 foot roll of wire fencing "could fall and injure customers," creating the specific unsafe condition that allegedly injured Galassi. *Id.*

Thus, a trier-of-fact could find the alleged unsafe condition in this case was reasonably foreseeable due to the nature of Lowe's business and its methods of operation. Yet, there is also contrary evidence, such as a lack of prior similar incidents, from which a trier-of-fact could reach the opposite conclusion. As a result, the Court of Appeals correctly held that there is "a genuine issue of material fact regarding whether the [reasonable foreseeability] exception to traditional notice requirements applies." *Galassi*, 27 Wn. App. 2d at 595.

Lowe's argues that notwithstanding the evidence discussed above, Galassi was "required to put on evidence" to avoid summary judgment. Pet'r's Suppl. Br.

at 13.  Similarly, amicus argues that the Court of Appeals "erroneously relieve[d] plaintiff of the burden of proof."  Amicus Curiae Mem. of WDTL at 3 (boldface omitted).  These arguments are misplaced.

It is certainly true that as the plaintiff, Galassi must bear the burden of proof *at trial*.  Yet, as the moving party on *summary judgment*, Lowe's has "the initial burden of showing the absence of an issue of material fact."  *Young*, 112 Wn.2d at 225.  Lowe's could have met its initial burden by simply "'pointing out'" the "lack of evidence to prove actual or constructive notice."  *Id.* at 225 n.1 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); *Ingersoll*, 123 Wn.2d at 654; *see also Keck*, 184 Wn.2d at 370; CR 56(b).  A similar strategy is often employed in medical malpractice actions, where "a defendant may move for summary judgment on the ground the plaintiff lacks competent medical evidence to make out a prima facie case."  *Young*, 112 Wn.2d at 226.  The burden then shifts to the plaintiff to produce "competent evidence to rebut the defendants' initial showing."  *Id.* at 227.

However, the defendant has a choice of strategies; it "may move for summary judgment by setting out its own version of the facts *or* by alleging that the nonmoving party failed to present sufficient evidence to support its case."  *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 350, 144 P.3d 276 (2006) (emphasis added).  Here, Lowe's selected the former strategy, setting out its

own version of the facts, affirmatively asserting that it did not have notice and "the [reasonable foreseeability] exception does not apply," and attempting to support this assertion through the submission of evidence, including Employee Jenkins' declaration, a photograph of the display shelf, and Lowe's interrogatory answer confirming the lack of prior similar incidents. CP at 14 (capitalization and boldface omitted).

The fact that Lowe's summary judgment strategy was unsuccessful in this case does not relieve plaintiffs of their burden of proof. It is merely a case-specific outcome in accordance with the well-established rule that "[i]f the moving party does not sustain its burden, summary judgment should not be granted, regardless of whether the nonmoving party has submitted affidavits or other evidence in opposition to the motion." *Hash v. Child.'s Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988); *see also White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 170, 810 P.2d 4 (1991) (citing *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977); *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989)); CR 56(e) (burden to "set forth specific facts showing that there is a genuine issue for trial" arises only after "a motion for summary judgment is made and supported as provided in this rule").

Finally, Lowe's raises similar concerns to those in *Johnson*, 197 Wn.2d at 618-19, arguing that the Court of Appeals' decision here effectively creates "a per

se rule that the danger of falling merchandise is always reasonably foreseeable," resulting in "strict liability" for retailers. Pet'r's Suppl. Br. at 15; Lowe's Home Ctrs., LLC's Pet. for Discr. Rev. at 13. We emphasize that the reasonable foreseeability exception *never* operates as a per se rule, including in cases of falling merchandise. Whether the exception applies in any particular case depends on the evidence presented, with the plaintiff bearing the burden of proof before the trier-of-fact. As discussed above, the evidence in this record does not conclusively prove the reasonable foreseeability exception applies, but it is sufficient to create a genuine issue of material fact precluding summary judgment.

We also emphasize that even where the reasonable foreseeability exception applies, it does not impose strict liability, or any liability at all, because the "other elements of a negligence claim [do not] disappear." *Johnson*, 197 Wn.2d at 619. The exception "does not obviate the need to prove the existence of the unreasonably dangerous condition" or any other element, nor does it "shift the burden to the defendant to disprove negligence." *Id.*; *Pimentel*, 100 Wn.2d at 49. It is merely a way in which a plaintiff might prove cause in fact.

CONCLUSION

Lowe's did not meet its initial burden on summary judgment regarding the applicability of the reasonable foreseeability exception. Accordingly, we affirm the Court of Appeals and remand to the trial court for further proceedings.

Yu, J.

WE CONCUR:

Stephens, C.J.

Gordon McCloud, J.

Johnson, J.

Montoya-Lewis, J.

Madsen, J.

Whitener, J.

González, J.

O'Donnell, J.P.T.